ALBANY,
August, 1830.

THE NEW-YORK STATE BANK *vs.* FLETCHER.

TheNewYork
State Bank
v.
Fletcher.

A *promissory note* taken by express agreement *in payment* of a judgment is an extinguishment of the precedent debt.

A *surety*, who pays the debt of his principal, is entitled to be substituted in the place of the creditor, as to all the means possessed by him to enforce payment against the principal debtor ; but the *surety of a surety*, though compelled to pay the creditor, is not entitled to be substituted in the place of such creditor for the purpose of enforcing the payment against the principal debtor, if such debtor has paid his *immediate* surety.

MOTION to set aside an execution on the ground of the judgment having been paid. In December, 1827, C. Adams became the endorser of a note of $500 made by the defendant, which was discounted at the New-York State Bank. The note, when, due, not being paid, the maker and endorser were sued, and separate judgments obtained against them, in August, 1828. The amount of the judgment against the maker, the defendant in this cause, was $548, 18 ; on which the execution now sought to be set aside was issued. In October, 1828, Adams applied to the attorney of the bank, and enquired whether, if he could procure the note of *Roswell Reed*, the plaintiffs would accept it *in payment of the judgments* against him and Fletcher ; and receiving an assurance that such note would be accepted, he shortly after presented to the attorney of the bank a joint and several note of himself and Reed for the sum of $600, dated 1st November, 1828, payable in six months, which the attorney delivered to the cashier of the bank ; the note was discounted, and the amount due on the above judgment was retained by the bank, and the balance was paid to Adams. The $600 note not being paid, a suit was commenced upon it, the writ being issued 29th July, 1829, and made returnable at the August term following ; Reed alone was arrested, and on the 18th August he paid the amount due on the note, together with the costs. At the time of the payment of the money it was agreed by the attorney and cashier of the bank that *Reed* should have the benefit of the judgments against the defenant and Adams. On the 15th June, 1830, the sheriff of Saratoga called on the defendant with an execution in the above

August 5th.

ALBANY,
August, 1830.

TheNewYork
State Bank.
v.
Fletcher.

cause, directing the levy of the whole amount of the judgment; which the execution was issued at the request and by the direction of Reed.

The defendant made affidavit that after the commencement of the suits against him and Adams, on the note of December, 1827, he from time to time made payments to Adams, to be applied to the discharge of that note, and that on the 28th July, 1829, he made a final settlement with Adams, who pretended that he had been obliged to pay the whole amount of the judgment against him on execution, and paid the balance due, and received from him a release and an indemnity against all liabilities on account of the said note. Adams was then reputed to be in good circumstances, but has since become insolvent. It further appeared by the affidavit of the attorney of the defendant, that Reed was present at the time and place of the settlement between the defendant and Adams, and received a conveyance of a certain farm from the defendant, and the attorney expressed his belief that Reed must have known that Adams then claimed to have paid the judgment against him, and that such claim was allowed by the defendant. In answer to which, Reed made affidavit that the conveyance taken by him was a release of the equity of redemption of certain premises mortgaged by the defendant to Adams, which mortgage was assigned to him, and denied all knowledge of any allegation by Adams, that he had paid such judgment. Reed is the father in law of Adams.

On this state of facts, a motion was made to set aside the execution.

*M. T. Reynolds,* for the defendant.

*P. S. Parker,* for the plaintiff.

*By the Court,* MARCY, J. Reed, who claims the right to enforce the judgment in the above cause, must claim such right either on the ground of a purchase or on the principle that he is entitled to be substituted in the place of the plaintiffs as the surety of their debtor, he having paid the debt.

He is not the *bona fide* assignee of the judgment. I think the facts show that the judgment was paid before he paid the debt of his principal. In some cases, the giving of negotiable paper is equivalent to the payment of money. 8 *Johns. R.* 202. In the case of *Barclay* & *Proctor* v. *Gooch*, 2 *Esp. Rep.* 571, the plaintiffs were security for the defendant for money that he held belonging to third persons. The defendant failed, and the plaintiffs were called on as sureties to pay and gave their note with interest. This was ruled at the circuit by Lord Kenyon to be a payment to Gooch's creditors, and the plaintiffs were allowed to maintain an action against him for money paid by them for his use. Chief Justice Parsons remarks, in the case of *Thatcher* v. *Dinsmore*, (5 *Mass. R.* 299,) that it has long been settled as law in that state, that a negotiable note, given in consideration of a simple contract debt due, is a discharge of the simple contract. The doctrine, as laid down in these decisions, is perhaps a little broader than that which has been adopted in this state. The rule established here is, that negotiable paper is not payment of a pre-existing debt, unless it is expressly agreed to be accepted as such. I take the law to be that it is payment, if expressly accepted as such, whatever be the grade of the pre-existing debt.

In *Tobey* v. *Barber*, 5 *Johns. R.* 68, a note was taken for rent due on a lease, and an absolute receipt of the payment of rent endorsed thereon. The plaintiff was permitted to recover in covenant for the rent, the note not being payment. The court say that a note, either of the debtor or of a third person for a pre-existing debt is no payment, unless the creditor expressly agree to take it as payment, and to run the risk of its being paid, or unless he parts with the note, or is guilty of *laches* in not presenting it for payment in due time. No distinction was taken in the application of the rule founded on the character of the previous debt, whether a simple contract debt, judgment, or a specialty debt. A negotiable note taken by express agreement in payment thereof by the creditor, is an extinguishment of such previous debt. The rule that I have quoted from *Tobey* v. *Barber*, is laid down with great caution. It is there stated that the note must

be expressly agreed to be taken as payment, and that the creditor will run the risk of its being paid. I am not sure that this latter member of the sentence varies the rule. If the paper is accepted in payment by an express agreement, the risk of payment is of course on him who takes it.

To apply this doctrine to the case before us: Was the note drawn by Adams and Reed taken in payment? It is explicitly stated in the affidavit of the attorney for the plaintiffs, read in opposition to this motion, that after the recovery of the judgment in this case, and of another judgment for the same demand against Adams, he (Adams) applied to know whether, if he should procure Reed's note, it would be *accepted in payment* of the two judgments, and the attorney assured him that it would be so accepted. The joint note of Adams and Reed was procured, delivered to the cashier of the plaintiffs, discounted, the amount due on the above judgment retained by them, and the balance paid to Adams. Here is proof of an express agreement to take the note *in payment*; it is in fact discounted and the avails to the amount of the judgments retained by the plaintiffs. This note was not paid when it fell due; Adams and Reed were prosecuted on it, and Reed paid to the attorney of the bank the full amount of the principal of the note with interest and costs; and then it was agreed by the cashier and the attorney of the bank that Reed should have the benefit of the above judgment as well as that against Adams. Thus it appears, that in addition to the agreement to take the note in payment, appropriating the avails of it when discounted to the payment of the judgment, the note has in fact been paid. The plaintiffs had in truth no valid subsisting judgment to assign to Reed, at the time their cashier and attorney agreed to give him the benefit of the judgment obtained in the above suit. I am of opinion, therefore, that Reed has no right as the legal assignee of the bank to enforce the judgment. His right was not sought to be enforced so much in the character of an *assignee*, as that of a *surety* paying the debt of his principal; and in that character he claimed upon a principle of equity to succeed to the creditor's rights against the principal. The case of *Clason* v. *Morris*, 10 *Johns. R.*

524, lays down a very salutary rule upon this subject, which I shall feel every inclination to apply to every case to which it is fairly applicable.

A surety who pays a debt for his principal has a right to be put in the place of the creditor, and to avail himself of every means possessed by the creditor to enforce payment against the principal. Reed was *not the surety of Fletcher*, the defendant in this cause, but of Adams. He has a right to be put in the place of the bank, so far as respected their means to enforce payment against Adams, but not against Fletcher. By the relationship of principal and surety between Adams and Reed, and the payment of the debt by the latter, he acquires no right to assert a claim against Fletcher that Adams, his principal, could not have asserted. I do not mean to say, that if Adams, by paying the plaintiffs, could have enforced the judgment against Fletcher, that Reed having done the same thing as surety of Adams, would not have a similar right to enforce that judgment; but Fletcher has paid Adams the amount of the judgment on the allegation by Adams that he had paid it to the plaintiffs. Adams could not, therefore, invoke any equity powers of this or any other court to aid him to enforce the judgment against Fletcher; and Reed, *succeeding to the rights of Adams*, must be under the same interdict. Equity will not put Reed into the shoes of Adams, though he has paid the debt for which Adams was surety for Fletcher, to enable him to do what it would restrain Adams from doing.

Motion granted.