# EDGERLY *v.* EMERSON.

Ordinarily, payment of a joint debt by either of the co-debtors, is a discharge of the debt, and of any action, judgment, or execution founded upon it.

But if the debt is paid by a surety, and the creditor assigns to him any collateral security, the debt will be regarded as still subsisting and undischarged, so far as is necessary to support the security.

An attachment is a collateral security for the payment of the debt; and if the debt, with the action or execution, is assigned to a surety, to enable him to avail himself of the property attached, the debt will be held to be still unpaid, for that purpose, only.

A contract, shown to be entered into by mistake, and corrected, or agreed to be disregarded by the parties, will be held void as to every body, as it would be if amended by a decree of a court of equity.

A discharge, written upon an execution, is but a receipt, and like other receipts may be varied, explained or contradicted by parol evidence.

The rule that parol evidence is not admissible to vary, explain or contradict a written contract, applies only to the parties to the contract, or their privies. Third persons, are always at liberty to show the truth.

Directors of banks, may bind the corporation, by a major vote of those present, at a regular, stated meeting, or at a special meeting, at which all have been notified, if a quorum are present.

If by the charter, a certain number are made a quorum, the bank is bound by the unanimous concurrence of that number at a casual meeting, and without notice to the others; if notice is not prescribed by the charter or by-laws.

It is not necessary that the votes or decisions of the directors, or other agents of corporations should be recorded, unless recording is required by the charter or by-laws.

If not recorded, they may be proved by parol.

If they are recorded, they *must* be proved by the record, or by the usual secondary evidence.

In an action of trover, or in any action for a tort respecting personal property, it is not enough to describe the goods as "certain goods, to wit: a lot of goods in a certain store in A."

A declaration for negligently taking care of goods, deposited for safe keeping, so that they were injured and lost, is not supported by proof, that the bailee refused to deliver the goods on request.

Edgerly *v.* Emerson.

A refusal to deliver goods on demand, is not evidence of a conversion, if the bailee has a right to retain them, by virtue of a lien.

The general owner of goods, claimed by two of his creditors under different liens, may, ordinarily, be a witness, because his interest is balanced; but if the value of the goods is in dispute, he cannot be a witness to that point.

CASE. The declaration comprised four counts.

The first, alleged that the plaintiff, on the fifth of May, 1847, at the request of the defendant, had caused to be delivered to him, divers goods, &c., to wit: a lot of goods being in a store in Alton, occupied by one W. W. Jones, being the same store and lot of goods, mentioned in the receipt, or writing, of the defendant to the plaintiff, dated May 5th, 1847, in words and figures following, to wit: " May 5th, 1847, Josiah B. Edgerly, deputy sheriff, having this day entered the store occupied by William W. Jones, with a demand in the name of the Rochester bank, against said Jones, and having attached all said Jones' interest to the goods in said store, this is to show, that I take possession of the same, for the said Josiah B. Edgerly, for safe keeping, William Emerson ; " property of said Edgerly, of the value of $1500, to be taken care of, safely kept, and re-delivered on demand ; and the defendant received said goods, for the purpose aforesaid, and it thereupon became his duty to take care of, and safely keep the same, for the plaintiff, and to re-deliver the same on request ; yet the defendant, though requested to deliver said goods to the plaintiff, on the thirteenth of September, 1847, did not take care of them, nor keep them safely, nor deliver them, but by his neglect the goods were wholly lost.

The second count alleged, that whereas, Emerson, at his request, had the care of certain goods, to wit: (here enumerating the goods,) of the value of $1500, property of said Edgerly, and thereupon it became the duty of the said Emerson, whilst he so had the care of said goods, to take due care thereof, yet the said Emerson, though on the thirteenth of September, 1847, requested by said Edgerly, to re-deliver said goods to him, did not, whilst he so had the care of said last mentioned goods, take proper care of the same, but through his neglect, the said goods were damaged and injured, and wholly lost to the plaintiff.

The third count was in trover, setting forth the goods in a schedule.

The fourth count was in trover, describing the goods as in the first count, to wit: the goods described in a certain receipt, or writing, set forth as in the first count.

The defendant objected to the first, second, and fourth counts, as insufficient, but the court overruled the objection.

The case was tried on the general issue.

The plaintiff offered in evidence, a receipt, as set forth in the first, and last counts. The defendant objected, because, it is merely a receipt for an *interest*. But, there being no evidence, that Jones' interest was qualified, or less than an absolute title, the court overruled the objection.

The plaintiff offered in evidence, a writ in favor of the Rochester bank, against W. W. Jones, S. J. Richards, and David Legro, on which was the following return, " May 5th, 1847, I attached all the interest, which W. W. Jones has, in the goods in the store occupied by him, amounting, according to an invoice and appraisal of William Emerson, to $390.80. Josiah B. Edgerly, deputy sheriff."

The defendant objected to the admission of the return, because it purported to be, not an attachment of the *goods*, but of the debtor's *interest* therein *merely*, which was not a valid attachment; but the court overruled the objection.

A copy of the judgment against Jones and others, in the above action, was produced, and the original execution, which issued upon it; upon this execution was the following endorsement: " Strafford, ss., January 17, 1848. Then the within execution was fully paid and satisfied, by the within named David Legro, he, having then paid me the debt, and costs, as within named, in consideration of which, I hereby fully, and forever, discharge the within execution, so far as any interest the plaintiffs have therein. The president, directors, and company, of the Rochester bank, by John McDuffie, Jr., Cashier."

The plaintiff proposed to show, that this discharge was written upon the execution, through mistake, and contrary to the agreement of the parties, and that the same was intended, and

supposed at the time it was executed, to be an assignment of said execution, to Legro, and to prove this, he offered the testimony of John McDuffie, Jr., who signed said discharge, to which the defendant objected; but the court permitted it.

The plaintiff proposed to show by parol, that it was agreed between the bank and Legro, that Legro should pay to the bank the amount of the execution, and the bank, by their cashier, McDuffie, should assign to him the execution, and all their rights as against Jones, at the same time that the discharge was written upon the execution; but no vote was passed upon the subject.

The defendant objected, that the proceedings of the directors could be proved by the records alone; but the court decided, that if the directors agreed, in any matter of business, it was not necessary that any formal question should be put, or vote passed; and that if their agreement was not recorded, it might be shown by parol.

It appeared, that the meeting of the directors, last referred to, was a special meeting, and that only four, of the seven directors, were present, or notified. The defendant objected to the meeting, as illegal, but the court ruled, that if a quorum were present, the proceedings were valid.

The plaintiff produced an assignment of this judgment from the Rochester bank, under their common seal, to David Legro, bearing date immediately before the trial. The defendant objected, that an assignment of the execution to one of the joint debtors, who is a surety, upon his paying to the creditor the amount, is a discharge thereof, and that he cannot proceed thereon, against any of the other parties thereto; but the court overruled the objection.

William W. Jones, was offered as a witness, by the plaintiff. The defendant objected to his admission, on the ground, that though his interest was balanced, as to the plaintiff's and defendant's claims to the property, yet he was interested to charge the defendant with a larger sum; one of the points in dispute being what was the amount of the goods in the defendant's hands, and what was Jones' interest in them; but the court admitted his testimony.

There was evidence tending to show, that before the attachment, made by the plaintiff, the goods had been attached at the suit of Amidown, and others, and that the defendant had receipted to the attaching officer for them; but the evidence also tended to show, that the defendant suffered the goods, after that attachment, to continue in the store, subject to the entire control of Jones, who continued his trade in the store, and sold portions of the goods, as he had opportunity.

The defendant excepted to the rulings of the court, and, the jury having found a verdict for the plaintiff, moved for a new trial, and in arrest of judgment, for the insufficiency of the declaration.

*R. & W. A. Kimball,* and *Hobbs,* for the plaintiff.

*Christie,* for the defendant.

BELL, J. The most important question raised by this case, is, whether a surety, against whom and the principal, a joint judgment has been rendered, may agree with the creditor, upon payment of the amount of the debt, to assign to him the judgment and execution; and whether the surety, in case the judgment and execution are so assigned to him, can avail himself of the execution to hold, by a levy, the property of the principal, attached on the original writ.

The general principle, that a surety is entitled in equity, to be subrogated to all the securities which the creditor holds against the principal, is every where admitted. *King* v. *Baldwin,* 2 Johns. Ch. Rep., 554; *Clason* v. *Norris,* 10 Johns,. 524; 2 U. S. Eq. Dig., 593, §§ 1, 2; *Richardson* v. *Washington, Bank,* 3 Met., 563.

So it is beyond question that the surety, paying the debt, may stipulate for an assignment of all the collateral securities of the creditor against the principal, and such assignment will be protected in courts of law, as well as in equity. *Atwood* v. *Vincent,* 17 Conn. Rep., 575; *Russell* v. *Huguenin,* 1 Scam., 562; *Norton* v. *Soule,* 2 Greenl., 341; *Powell* v. *Smith,* 8 Johns.,

249 ; *Pigon* v. *French*, 1 Wash. C. C. Rep., 278 ; *Bank* v. *Fletcher*, 5 Wend., 85 ; *Sumner* v. *Rhodes*, 14 Conn. Rep., 135 ; *Corey* v. *White*, 3 Barb. S. C., 12 ; *Bank* v. *Mosely*, 1 Strob., 414 ; *Stiles* v. *Eastman*, 1 Kelly, 205.

It is equally clear, that the payment of a debt by any person who is liable to its payment, is a discharge of it. It is thenceforward *functus officio*, and cannot be enforced against any person, who is liable to its payment in the same degree as the party paying. *United States* v. *Preston*, 4 Wash. C. C. Rep., 446.

So payment of a judgment, or execution, by either of the judgment debtors, discharges the execution, and is a satisfaction of the judgment. *Hammatt* v. *Wyman*, 9 Mass., 138 ; *Brackett* v. *Winslow*, 16 Mass. Rep., 153 ; *Bank* v. *Abbott*, 3 Denio, 131 ; *Baldwin* v. *Merrill*, 8 Humph., 132.

And, as the general rule, the same result follows from a payment made by any other person ; and any agreement made by the party making the payment with the creditor, that the execution shall not be discharged, or returned satisfied, in order that the party paying may collect upon it a part or the whole of the judgment debt from another of the judgment debtors, will be entirely nugatory.

Thus where a sheriff paid to the creditor the amount of an execution, in his hands, upon an understanding that he was to collect the money on the execution, it was held the execution was discharged by such payment, and neither that, nor an alias execution could be used for such purpose. *Morris* v. *Lake*, 9 S. & M., 521 ; *Garth* v. *Campbell*, 10 Mo. Rep., 154 ; *Sherman* v. *Boice*, 15 Johns., 443.

So where a co-debtor pays the execution, upon an agreement that the same may not be discharged, in order that he may use it to collect of the co-debtors, the whole or even his just share of the debt, the payment is held a satisfaction of the judgment, and the execution, of course, is no longer in force. *Hammatt* v. *Wyman*, *Brackett* v. *Winslow*, *Bank* v. *Abbott*, *Baldwin* v. *Merrill*, before cited.

And this general principle, is probably equally applicable un-

der ordinary circumstances, to the case of the co-debtor, who is surety merely, as it is, where all the debtors are principals. *Low* v. *Blodgett*, 1 Foster's Rep., 121.

But the rule, that a surety may take an assignment of any security for the payment of the debt, which is held by the creditor, unavoidably implies an exception to the general rule, that payment of a debt by a co-debtor, discharges the other co-debtors, whether the debt rests in contract merely, or is merged in a judgment. It is of the nature of all securities for a debt, to be the mere incidents of that debt, and entirely dependent upon it. Payment of a debt, discharges all the securities for it. The mortgage, either of real or personal property is discharged by payment of the mortgage debt ; and in the same way pledges, and liens are at once at an end, when the debt is paid. If, then it was held, that by the payment of a debt by a surety, the debt was entirely discharged, then all the collateral securities of the creditor must be also discharged. He would no longer have any thing to assign, and the equitable principle, that the surety is entitled to the benefit of all the securities of the creditor, would be entirely defeated. But it has never been so held ; but the debt is regarded as still unpaid, and unsatisfied, so far, and perhaps no further than is necessary to the preservation of the sureties' interest in such securities. We apprehend, therefore, that the rule, that payment by a co-debtor discharges the debt, must be subject to this exception:—if the co-debtor, making the payment, is a surety, the debt will be holden undischarged, so far as is necessary to preserve and give effect to the collateral securities against the principal, assigned by the creditor to the surety, either voluntarily, or by a decree of a court of equity. Assuming then, this principle, the inquiry is, whether an attachment under our laws, is such a collateral security for the payment of the debt, as to come within the same reason and rule, as the mortgage, pledge, and other more common collateral securities.

It has been decided here, upon very careful consideration, and upon a most thorough and satisfactory examination, that an attachment, is a lien and security, and that the benefit of such

lien is secured to a creditor; the debt, though discharged by a decree in bankruptcy for every other purpose, will be held to continue in full force, so far as is necessary for the preservation of that lien; and that a judgment may be entered in the action, in which the attachment is made, to be levied upon the property attached, and not otherwise.

And we apprehend, that the lien of an attachment is to be preserved for the benefit of the surety, who pays the debt and takes an assignment of the creditor's securities, in the same manner, and to the like extent, whether the payment be before, or after judgment. The payment, for most purposes, discharges the debt, but does not so discharge it, as to destroy the security of the surety; but a judgment may be entered up, to be levied on the property attached, or, if judgment be rendered, a levy on that property may be effectually made, though the execution would be injoined, or set aside, if used for any other purpose. And we perceive no reasonable objection to this principle, which would not equally apply to prevent a surety who has paid the mortgage debt to the creditor, and taken an assignment of the mortgage, from prosecuting a pending suit to foreclose, or to commence or complete the service of the writ of possession issued in such an action.

The principle proposed, with the qualification stated, is not necessarily in conflict with any case we have met with on the subject; while it is directly supported by the cases of *Watts* v. *Kinney*, 2 Leigh., 594; *Miller* v. *Pendleton*, 4 H. & M., 436, and *Eppes* v. *Randolph*, 2 Call., 125, as cited, 2 U. S. Eq. Dig., 593, 594, which are cases of lien, created by a judgment or specialty.

We understand, this point has before been decided, as we hold it, in this county, in a case not yet reported.

The execution necessarily produced by the plaintiff to sustain his action, has upon it a discharge, made by the proper officer of the bank, acknowledging payment of the entire debt, for the payment of which the plaintiff claims to hold this property. An attachment is all the title he claims to have; if the debt is paid, the attachment is at an end, and the action must fail. The

plaintiff is consequently driven to explain, how this discharge came upon the execution, and to show the reasons why it should not operate to defeat his claim. This he does by showing that this discharge was written by mistake ; and thereupon the question arises, whether this can be done. Now, it is to be observed, that this is not a case where the parties to a contract make adverse claims, the one insisting upon a written contract or discharge, and the other denying its validity, on the ground that it was not the instrument, which the parties understood it to be, and designed to execute. Both parties to the instrument here, agree that the understanding between the bank, and the surety, was, that the bank should make an assignment; both agree that no change of purpose had taken place in either, and that there was no design to make a discharge ; and that the discharge actually made, was made so from the mistake of the writer by whom it was drawn. Both those parties agree, that it is not the instrument, either designed ; and both agree to treat it as an error, and to disegard it. Upon these facts, the defendant here, asks the court to regard this act, as a valid and binding act ; though he has directly no interest in the matter, nor right to interfere. He has a right to insist upon any facts, and to claim the benefit of any thing, which the parties have actually and designedly done, and to resist any attempt *ex posto facto*, to give a different color to a transaction, from what the parties at the time designed ; and for that purpose to scrutinize the testimony and evidence bearing upon the point, so as to elicit the true state of the minds and intentions of the parties ; but, the facts being shown, he has no right to insist that a writing, of whatever character, made upon an execution by mistake, shall operate contrary to the intention of both the parties to it, to discharge either the execution, or the debt and judgment on which it is founded.

As between the parties, it is clear, that in equity, a writing of this kind, made by mistake, would be set right, and the parties forbidden to attempt to take any advantage of it.

One of the most common classes of cases, (says Story's Eq. Jur., 164, § § 152, 153,) in which relief is sought in equity, on account of a mistake of facts, is that of written agreements,

either executed, or executory. Sometimes by mistake, the written agreement contains less than the parties intended, sometimes it contains more, and sometimes it simply varies from their intent by expressing something different in substance from the truth of that intent. In all such cases, if the mistake is clearly made out by proofs entirely satisfactory, equity will reform the contract, so as to make it conformable to the precise intent of the parties; and this, notwithstanding that mistake is to be made out by parol evidence.

The principle being settled, that equity, which is the law of the land, will compel parties to correct the mistakes made in their written instruments, and it being clear that all courts will regard such corrected instruments, as having always had their amended form, can it admit of any doubt, that where the parties, have volun tariy corcreed such mistake; and executed new instruments to carry into effect the original purpose, the court will give effect to the intention of all parties. There can be none, where no rights of third persons intervene. Here it is apparent, it was never designed by either party, that the judgment, or the execution should be discharged. On the contrary, both parties designed to keep it alive, for the protection of the rights of Legro, the surety and party in interest here.

But there are other grounds, on which the plaintiff is at liberty to show the truth in relation to this discharge, and to prove that it was made entirely through mistake and misapprehension of the parties.

This discharge is, in substance, merely a receipt; and like all other receipts, it is liable to be impeached for fraud, or mistake, and to be contradicted, varied, or explained by oral testimony, even between those who were originally parties to it. *Stackpole* v. *Arnold*, 11 Mass., 32; *Gerrish* v. *Washburn*, 9 Pick., 338; *Johnson* v. *Weed*, 9 Johns., 310; *Southwick* v. *Hayden*, 7 Cow., 334; *White* v. *Palmer*, 8 Barb. S. C., 69; *Giddings* v. *Munson*, 4 Ver., 308; *Pritchard* v. *Brown*, 4 N. H. Rep., 400.

But if it were more than a receipt, so that as between the parties to it, and their privies, no parol evidence could be receiv-

ed to vary, explain, or alter the terms of the writing, yet here, the question arises between persons who were never, in any respect, parties to this discharge, nor in any privity with those who were so. They, therefore, have the right to show the truth, and to prove that the instrument was made through mistake or fraud, or that it represents the transaction untruly, either through the ignorance, carelessness, or design of the parties. Written instruments, are, as to third persons, but the written statements of others, by which, of course, they cannot be concluded. *Badger* v. *Jones*, 12 Pick., 371 ; 1 Greenl. Ev., 317, § 279 ; 2 Phil. Ev., 354, 355, & 2 Cow. & H., notes, 390, p. 587; *Johnson* v. *Blackman*, 11 Conn., 351 ; *Berlin* v. *Norwick*, 10 Johns., 229.

It is in conformity to this principle, that it has been held here, that in the case of a mortgage, the payment of money will be regarded as a satisfaction of the debt, or not, as may best serve the purposes of justice. And whether the mortgage has been in terms discharged or assigned, or neither, it will be considered as discharged, or as subsisting, as justice may require. *Willard* v. *Harvey*, 5 N. H. Rep., 252 ; *Robinson* v. *Leavitt*, and cases there cited ; *Bailey* v. *Willard*, 8 N. H. Rep., 429.

There is nothing in the nature of a mortgage, which limits the application of this principle to that case. The decisions go to establish the rule, that where the rights of third persons are concerned, the court is not concluded by the form of the writings which the parties immediately interested may have adopted, but they will look to the circumstances, the state of the case, and the situation of the parties, as well as to the direct evidence of the intentions of the parties, in giving effect to the payment, and will hold it to operate as a discharge, or as a purchase, when such is the form of the writing, only where substantial justice will be done, by giving it that effect. So that in this case, the court are at liberty, notwithstanding the writing, to give such effect to this payment, as is necessary to accomplish the objects of the parties, either proved, or reasonably presumed.

It was objected, that the proceedings of the directors of the

bank, could be proved by their records alone ; but their proceedings are not required by law, to be matters of record. If it appears, that they are written or recorded in their books, those records or books must be produced, or their absence accounted for. If parol evidence of their votes, as they have been reduced to writing, is offered, it will be admissible, only as secondary evidence. But the business of bank directors, is not, more than that of selectmen of towns, necessarily, or even usually done by votes ; neither is any written entry, or record of their action necessary, to give validity to their proceedings. The rule is, as to bank directors and selectmen, as it is in the case of most joint agents, where no special rule is prescribed by statute, that if the agents agree in adopting any particular course, their principals are bound by what they do, though there is no formality in the mode of ascertaining that agreement, and nothing written in regard to it.

It was also objected, that the meeting of the directors, on whose action the plaintiff relies, was illegal and their proceedings invalid, because it was a special meeting, at which only four of the seven directors were present or notified. In the case of *The Despatch Line of Packets* v. *The Bellamy Manufacturing Company*, 12 N. H. Rep., 205, certain questions were determined, in relation to the powers of the directors of corporations, by which we feel bound to abide. The case was considered with great care and ability. In that case it was held :

I. That if the authority of the directors, to manage and exercise a general superintendence, and control over the affairs of the corporation, had been conferred by the charter itself, it would have been in the nature of an original corporate power, in a definite number and a majority of the whole number being duly assembled at a regular meeting, might act by major vote of those present.

II. That where the by-laws of a private corporation confer upon the directors power to act in behalf of the corporation, without special limitation as to the manner, a majority may act within the scope of the authority given to the board, and bind

the corporation, either where there is a consultation of all together and a concurrence of a majority, or where there is a regular meeting, at which all might be present, and a majority actually meet and act by major vote.

III.   That the act of a majority of such board, in the case last supposed, does not bind the corporation, unless

1.   There was an assent of all the directors at a meeting, or *perhaps* separately obtained:

2.   Or there was a meeting and consultation of the whole board, and a vote of a majority:

3.   Or a meeting, held at some regular period, at which a majority were present, and acted by a major vote:

4.   Or a meeting regularly notified, at which a majority assembled, and acted by major vote.

IV.   When the act purports to be the act of the board, it may be presumed it was the act of a majority, until the contrary is shown.

Here it may not be amiss to suggest, that we concur in the doubt suggested by the court, as to the validity of any action of a majority, or even of all of a board of directors, where there has been no meeting, or consultation, each giving his assent at a different time and place from others.   We think, with the learned judge who delivered the opinion in that case, that " there are safeguards in consultation, and considerations of policy, as well as of construction, which in the absence of special authority authorizing a different course, furnish an argument in favor of the position, that an authority to two or more officers, or agents of a corporation, in their discretion to do certain acts, is not well executed by the assent of all, if given separately." *King* v. *Winwich*, 8 D. & E., 454.

Without, then, intending to disturb the decision in *The Despatch Line* v. *The Bellamy Co.*, as to the questions which alone arose in that case, and which related exclusively to the case of directors deriving their powers from the corporation itself, either by its by-laws or votes, we propose to examine the question, whether the powers of officers of corporations, conferred upon them by law, are in all cases subject to the limitations, so cau-

tiously introduced by the court, in stating the powers of this class of officers : namely, that a majority of the whole number, *being duly assembled at a regular meeting*, might act by a major vote of those present. We assent to the rule as stated. It relates to the acts of a majority of those present, when less than the whole board are present at a regular meeting. If a quorum, usually a majority of the whole number, are present, a majority of that quorum may act. But this applies only to a regular meeting, which is a stated meeting, at which all have, of course, the needful notice and opportunity to be present, or a special meeting, at which all have been duly notified to be present. The question which arises in this case, is different. The meeting in question, was not a stated meeting, nor a meeting at which all had been duly notified to be present. Four only of the seven directors were present, and no others had been notified. The general principles applicable to the exercise of joint powers are well settled. When individuals or corporations, give an authority jointly to two or more persons, in order to bind the principal, all the agents must act. *Jewett* v. *Alton*, 7 N. H. Rep., 253 ; *Andover* v. *Grafton*, 7 N. H. Rep., 304. But where a number of persons are by law entrusted with power not of mere private confidence, but in some respects of a general nature, and all of them are regularly assembled, the majority will conclude the minority, and their act will be the act of the whole. *Grindley* v. *Barker*, 1 B. & P., 236 ; *King* v. *Beeston*, 3 D. & E., 592 ; *Green* v. *Millar*, 6 Johns. 39 ; *Farwell's Petition*, 2 N. H. Rep., 124 ; *Damon* v. *Granbly*, 2 Pick., 345.

There are, however, many cases, where an authority is granted to a board, or to several persons, or a majority of them, or a certain limited number, either more or less than a majority, who are thereby constituted a quorum. Thus, in the usual form of bank charters, there is a provision, that " no less than four directors shall constitute a board for the transaction of business, of whom the president shall be one, except in case of sickness, or necessary absence, in which case the directors present, may choose a chairman for the time being, in his stead." The effect of this clause we deem the same as a provision, that the direct-

ors, or any four of them, shall be competent to transact any business of the bank. Four constitute a quorum, and when assembled, possess all the powers of the entire board.

The position of the directors in such a case, must be closely like that of the selectmen of a town, of whom a majority are by statute made competent to act in all cases. Rev. Stat., ch. 34, § 2; Rev. Stat., ch. 1, § 13.

It has never been supposed, so far as we are aware, that it is necessary, that selectmen should have stated meetings for the transaction of business, though that is perhaps usually done, as a matter of convenience, nor that the whole must be present, or notified, in order to enable a majority to act. On the contrary, we conceive, that the very object of the statute, giving power to a majority of the selectmen, or making a certain number a quorum, was designed to obviate the strict requirements of the common law, that all business must be done either at stated meetings, or that all must be notified. In managing the prudential affairs of towns, and in the transactions of business corporations, many things are required and determined to be done and determined at times, when there could be no stated meetings, and when it might be difficult to procure the attendance, or even to notify all the members of a board. There was before no difficulty, except as to this point of notice; and the only useful effect of the statute provisions relative to a quorum, or the powers of a majority, is to give to them, the authority to act in the absence of the others, and without notice to them.

We are, therefore, of the opinion, that where a quorum of the directors of a bank meet, and unite in any determination, the corporation are bound, whether the other directors are, or are not notified.

Such we understand to be the construction, practically given to this part of their charters by all our banking institutions, and we think their convenience requires that it should be sustained.

It was in no wise material to the issue, whether the rulings of the courts relative to the directors' meetings were correct, or not. The plaintiff alleged the discharge on the execution was made by mistake. To show this, he introduced evidence, that

the agreement between himself and the bank was, that upon his paying them the money, the execution should be assigned to him, instead of being discharged, and that the discharge was written by the mistake of the scribe. Now on this state of facts, it was of no consequence, whether the meeting of the directors was regular or their proceedings valid. The point in question was, whether the discharge was written by mistake; and that is equally apparent, whatever was the character of the meeting. The writing was designed to carry into effect a supposed agreement; by mistake, it was so written as to defeat that object. If by an irregularity of the meeting there was really no agreement, then there were two mistakes, instead of one. The second meeting was equally immaterial. It was not necessary, nor useful, for the plaintiff to show that the execution had been assigned. If it was not discharged, it was of no consequence who owned it. A verdict will not be disturbed in consequence of the admission of immaterial evidence, or of any suggestions to the jury, which are not material to the case.

Jones was a witness. He was objected to because, though his interest was balanced to some extent, he had an interest to increase the amount, for which the defendant should be charged. The defendant claimed the goods in question, by virtue of certain liens. The plaintiff claimed them under an attachment, made subject to the defendant's claims. It was disputed whether the defendant's claims had not been discharged, or lost, and whether the value of the goods did not exceed the amount of the defendant's claims. It was a matter of indifference to the witness, whether the property was applied to pay the claims of one of those parties, or those of the other, but he had a direct interest to prove the value of the goods in the defendant's hands to be more than sufficient to pay his claims, since the overplus, must, in that case, be applied in discharge of the claim represented by the plaintiff. On this ground, he ought to have been rejected, and for this cause the defendant is entitled to a new trial.

It is moved in arrest of judgment, that the declaration is insufficient. The first, and fourth counts, are supposed to have

the same defect, namely, a defective and insufficient description of the goods, for the recovery of the value of which, the action is brought. In both counts the goods are described as "divers goods, &c., to wit: a lot of goods being in a store in Alton, occupied by one W. W. Jones, being the same store, and lot of goods mentioned in the receipt of the defendant," which is set forth, but contains no description of the goods beyond this, "all said Jones' interest to the goods in said store." The first is a special count in case, for not taking care of, keeping safely, and delivering the goods, as was his duty on a bailment; the other is in trover. In trover, and we see no reason for a different rule on the first count, the goods should be described with convenient certainty, that the jury may know what is meant; but the same accuracy is not required as in detinue, where the things themselves may be recovered. The courts construe liberally the descriptions of quantity, and are inclined to sustain the declaration, whenever, by any reasonable intendment, it can be supposed, the evidence may give certainty to terms ordinarily used in a loose and indefinite sense; because it is agreeable to experience, that many such words are used in particular trades, with definite significations. Such words are *pieces*, as of cloths or, ribbons; *pairs* as of curtains; *suits, sets*, as of buttons; packs, packages, bales, bundles, parcels, chests, &c., all which, are used in some branches of trade, to express more or less definite quantities; as packs of cards, or of beaver skins, packages of hardware, bales of cotton or of cloths, bundles of wire, &c.; and most of the cases on this subject, which are collected, 1 Com. Dig. Trover G., 2, 3, and 2 Saund., 74 note, will be found to be supported by this view.

But where the quantity of the articles is entirely uncertain, and they are not aided by any reasonable intendment; and still more, where the nature of the articles is uncertain, the declaration has always been held insufficient. Such are the following cases: " divers glass bottles," *Hicks* v. *Pendarvis*, 2 Lev., 176; " *cum aliis utensilibus,—Anglice*, implements." *Blackhouse* v. *Moor*, 3 Lev., 18; Cro Eliz., 817; " *diversorum mercimono-irum,—Anglice*, earthen ware." *Anon*. Stra. 809; " *diversis*

*vestimentis,*" 1 Vent., 114; 1 Com. Dig. Trover, G.; " *aliis parvis tœniolis,—Anglice,* ribbons, 2 Lev., 85.

In the present case the claim relates, to " divers goods, to wit: a lot of goods being in a store in Alton," &c. It is entirely uncertain, both as to the kind and quantity of goods, and is supported by no case which we have met with. These counts must be held bad and insufficient.

The second count, seems to us to be on its face entirely good and sufficient. Upon a motion in arrest of judgment, we do not look beyond the face of the declaration. If that is such as would entitle the plaintiff to recover, if it was fully supported by the evidence, it must be held sufficient on a motion in arrest.

The objection to the third count is, that the goods alleged to be converted, are set forth in a schedule annexed to the count, and not in the count itself. This mode of declaring, has been deemed objectionable by good judges; but it cannot be held reasonable, that a party who has kept silence until all the expenses of a trial have been incurred, should be then allowed to take advantage of a defect, by which he has not been prejudiced. After a verdict, any defect of this kind may well be held to be cured, and all objections on that account waived.

Though we deem these counts in themselves sufficient, yet there is an objection to the second count, distinct from its sufficiency; that it is not adapted to the plaintiffs case, and is not supported by the evidence. The gist of the second count is the neglect to take proper care of the goods, by means of which the goods, were damaged, injured and wholly lost to the plaintiff. The proof is designed to show, not that the goods were damaged and lost, from want of proper care, but that they were not returned according to the obligation and duty of the depositary, when they were demanded.

Upon the view of the evidence taken by the defendant, the second count was liable to this further objection. The defendant claimed, that at the time of the attachment, and always afterward, he had the right to retain the goods, by virtue of an antecedent lien of his own, and that his contract at the utmost, was not to re-deliver them on demand, but to hold them for the benefit of the plaintiff, subject to that lien.

If this should be deemed by the jury, the fair result of the evidence, the count was not adapted t o the plaintiff's case; because, instead of setting forth an unqualified delivery of the goods, to be restored on request, and relying on the common law liability and duty to restore them, the count should have set forth the delivery according to the facts, with the duty to restore the property, according to such modification of the ordinary duty of a depositary at common law, as would result in that case.

Upon the same view of the evidence, the third count in trover, was equally ill adapted to the plaintiff's case, since the plaintiff had no right of possession of the goods, so long as the lien continued to exist, and a refusal to deliver the goods would be no evidence of a conversion. Other points arose in the case, which we have not deemed it necessary to consider.

*Verdict set aside, and a new trial granted.*