By the Court. Duer, J.
The general rules of law applicable to this case may be stated in a few words.
When a factor has funds in his hands, belonging to a foreign correspondent, it is his duty, giving early information of the fact, to retain them, subject to the order of his principal, unless he has been previously directed or authorized to remit them. If he undertake to remit, when no such direction or authority has been given, the remittance is at his own risk; and consequently, when it is made by a bill of exchange, it is only the actual payment of the bill that can discharge him from his liability. On the other hand, when he has been directed, or has a discretionary power to remit, he acts, in purchasing a bill for that purpose, simply as the agent of his correspondent, and is then responsible only for good faith and due diligence. The remittance of the bill, when it appears that it *253 was purchased in good faith, and upon due inquiry, operates as between him and his principal as an absolute discharge, and the risk of the dishonor of the bill is cast wholly upon the latter, who, in that event, can look only to those whose names are on the paper.
Since the decision of the Supreme Court, in Leverich v. Meigs (1 Cow. p. 645), the law in this State must be regarded as settled, that the rules which have been stated apply, as well to a consignee under a del eredere commission, as to an ordinary factor; although I apprehend that the law is certainly otherwise on the continent of Europe, and probably in England. Such a commission gives of itself no authority to remit; and when that authority is given, the guaranty which the del credere imports is limited to the due payment, by purchasers, of the price of goods sold upon credit, and does not extend to the remittance of funds actually received. These general rules may be varied, as in other cases, by the special agreement of the parties. The consignee, or factor, may agree, with or without an addition to his ordinary commission, to guaranty all the remittances which he makes, or his authority may be limited by the instructions of his principal, and then he is only exonerated when the prescribed limits or conditions are observed. To which I add, that, whether he acts with or without authority, he may, in all cases, render himself personally liable, not only to third persons, but to his principal, by the form in which his remittance is made; that is, as drawer or endorser of the bills or notes which he remits.
The answer of the defendants in this case admits, that they received and sold the goods, to recover the price of which the suit is brought, as the agents and on account of the plaintiffs, but sets up, as a principal defence, that they had been previously instructed, by the plaintiffs, to sell the goods for cash or upon credit, and to remit the proceeds by a bill of exchange, drawn by persons in good credit; and then avers that, in pursuance of this authority, they purchased and remitted to the plaintiffs a bill of exchange, drawn by a house in good credit, payable to the order of the defendants, and endorsed by them to the plaintiffs; and covering the whole balance due to the latter, as the proceeds of the sale. In fewer words, the defence *254 is, payment by a bill of exchange, which the plaintiffs received, and were bound to receive, in full satisfaction of their claim.
It was insisted by the counsel for the defendants, that the only reply that has been made to the defence is, a denial that the drawers of the bill were in good credit at the time of its purchase; and certainly, were this the only issue raised by the pleadings, we could not hesitate to affirm the report of the referee, since we are by no means prepared to say that his finding upon this question of fact is against the weight of evidence. But, as we construe the pleadings, this is not the only, nor the most important issue which is raised. The reply, as we read it, contains a distinct and positive denial of the authority of the defendants, which we understand to mean their authority to purchase and transmit the bill in question, as the agents and at the risk of the plaintiffs. Hence, in order to sustain them defence, so far as it rests merely upon the purchase and transmission of the bill, the defendants were bound to prove that the instructions which they allege in their answer were, in fact, given, and that,'by their fair construction, they embraced and warranted the remittance, upon which they rely as an absolute discharge.
The first inquiry, therefore, is, whether this necessary proof has been given; .and the reply must be that assuredly it has not, unless it is contained in the terms of the agreement, under which it is admitted that the original connexion of the parties was formed, and their subsequent business transacted. This agreement is the only evidence bearing upon the question; and it does not appear, nor has it been pretended, that any instructions were ever given by the plaintiffs, by which its true import could be varied or enlarged. The terms of the agreement, it seems to us, are plain and unambiguous. The defendants agreed to "sell the goods consigned to them by the plaintiffs, and remit the proceeds, charging a commission of five per cent, on sales, two and a-half per cent, del credere, and one per cent, exchange; and these commissions the plaintiffs agreed to pay. It is true it appears, from the correspondence of the parties, that they differed as to the proper application and effect of these commissions; the plaintiffs naturally supposing that the *255 law in this State was the same as in Germany, believed that the guaranty of the del credere covered remittances, while the defendants insisted that the del credere was confined to sales, and that it was by the exchange commission alone that their guaranty of remittances was meant to be compensated; but we regard this difference as in truth im'material, since, accepting the interpretation of the defendants, it remains certain that, according to the understanding of both parties, the defendants were to guaranty the exchange which they purchased, as fully as the sales which they effected; and, in our judgment, the obligation thus created by the agreement was as positive and imperative in. the one case as in the other. It is possible that the defendants had a discretion to remit immediately or wait the instructions of the plaintiffs : but if, without thus waiting, they chose to remit, we are clearly of the opinion they were bound to guaranty; in other words, that the agreement into which they had entered, and from which all their authority was derived, imposed upon them a duty, from which, by no act of their own, without the consent of the plaintiffs, could they be discharged. It could never have been the meaning of the parties, that the defendants might assume the risk of exchange, or cast it upon the plaintiffs, at their pleasure; such a construction of their agreement would be just as unreasonable in reference to the guaranty of exchange as to that of sales. We apprehend, however, that it has never been imagined, that a del credere agent may, in his discretion, guaranty or not the sales which he effects, and whenever, from any cause, he is unwilling to assume the risk, by "relinquishing his commissions, cast it upon his correspondent. The object of the foreign merchant, in requiring a guaranty, as a general rule, would be wholly frustrated by vesting in his agent this unlimited discretion— a discretion, which, in a large majority of cases, would be certainly abused, and, in all, would be a direct temptation to negligence, dishonesty, and fraud. No man of common prudence would think of vesting it in an agent, and no agent of common sense venture to claim it; and so great is the improbability, that, in any given case, such was the understanding of the parties, that, in our judgment, it could only be overcome by uncontradicted evidence of an express agreement.
*256 In our opinion, the remarks that we have now made apply with equal force to a guaranty of exchange. In making it discretionary, there is the' same danger of abuse, the same temptation to carelessness and fraud ; and, consequently, there are the same reasons for holding the obligation to be positive and universal, unless, by Undoubted proof, it is shown to have been otherwise. There is nearly the same risk in purchasing exchange as in effecting sales; and the testimony shows, that there is a wide difference, naturally affecting their-market value, between bills of the first and of the second.class. Those of the. first are believed to be good ■; they are those, in the language of one of the witnesses, in relation to which “ not the slightest doubt is entertained.” The solidity of the sécond is a matter of opinion, not of knowledgethey are believed to be good, but no one ‘will say that they certainly are so. Give to the agent the discretion that is claimed; and the general mode of its exercise may-be safely predicted. Bills of the first class will be covered by his guaranty, and the naked risk" only of the second, be thrown upon the principal. . The guaranty, when useless, will be given, and withheld, only whe.n a just regard to the interest and security of the principal would render it of value, i That the plaintiffs never meant to give to the defendants a power so liable to be abused, we are entirely satisfied; nor is there any evidence that the defendants, until the dishonor of the bill, which is now set up as an absolute payment, claimed ‘to possess it. By their own admission, the defendants agreed, for a commission of one per cent., to guaranty the exchange which they remitted; and this stipulation, from its nature, attached itself to every remittance which they subsequently made, unless it can be shown that the plaintiffs, with a full knowledge of the facts, released them from its observance; in other words, consented to accept the "remittance as an absolute payment. The case, in our opinion, discloses no evidence whatever that the plaintiffs meant thus to adopt the remittance that is now relied on as a defence ; nor have any facts been proved, from which the defendants had the right, or we, as judges, are bound, to infer that such was their intention.
It is possible that the defendants meant that the remittance should operate as an absolute payment; but it would be absurd *257 to suppose that their secret intention was alone sufficient to discharge them ; and we mean distinctly to say, that there is no evidence that this intention of the defendants, if it existed, was made known to the plaintiffs, and that it was with this understanding that they accepted the remittance.
It is seen from these observations, that we attach no weight to the fact upon which the defendants’ counsel laid the entire stress of their argument, namely, that in the account of sales which accompanied the remittance the defendant omitted to charge an exchange commission; for while we agree with the counsel that this omission is apparent upon the face of the account, we are compelled wholly to dissent from the conclusions that have been drawn from it. The argument is, that the defendants, by not charging the exchange commission, gave notice to the plaintiffs, that the remittance was not to be considered as protected by their guaranty; and, consequently, that the plaintiffs, by retaining the bill, sanctioned the remittance as properly made, and dispensed with the guaranty, upon which they might otherwise have insisted. This reasoning is specious, but dissolves upon examination. An agent, who has bound himself to guaranty, may abandon, if he will, his right to the stipulated reward; but he cannot, by relinquishing his commission, release himself from his obligation. He cannot, by his own act, rescind his contract, and cast upon his principal the risk which he had himself consented to bear; and by holding otherwise, it is plain that we should give to the agent the very discretion which it has been shown that he ought not, and could never have been meant, to possess. Hence, the principal, when it is known to him that in a particular transaction the guaranty commission has not been charged, is not bound to infer that the agent meant, by the omission, to violate his contract; but may well suppose, either that the omission was accidental, or that the agent was content with the commissions he would otherwise receive.
A principal, having any confidence in his agent, would never suspect that the omission was intended to deprive him of the security for which he had stipulated, and a court of justice, in holding such to be its effect, would, in our judgment, give its sanction to a fraud.
*258 If the defendants meant that the plaintiffs should understand that the bill which they remitted was intended by them as an absolute payment, they were bound to say so in the plainest terms; and even had this express communication been made, the plaintiffs would have been justified in replying, that they would retain the bill until its maturity, and, if then dishonored, would hold the defendants to their original guaranty. As no such communication was made, the reply was unnecessary, and their silence, whatever may have been the views of the defendants, is no evidence of their acquiescence. Hence, the allegation that the plaintiffs approved and adopted the remittance as made by their authority, and at their own risk, we cannot do otherwise than regard as groundless. The defendants, under their agreement, had no right to remit at all at the risk of the plaintiffs ; and if such was their intention in the remittance, upon which they rely, we have no right to say that the intention was made known to the plaintiffs, far less that it was ratified by their subsequent conduct.
The result is, that the defendants either made the remittance under their original agreement, or without authority ; so that, qudoumque, vid ¿laid; it was made at their own risk, and having failed, they must be liable. Nor is this all. Had there been no positive stipulation of guaranty on the part of the defendants, and had their instructions from the plaintiffs been exactly such as are alleged in their answer, we must still have held that the plaintiffs, under the special circumstances of this case, are entitled to recover.
The goods of the plaintiffs were sold on a long credit, and on the very day of the sale the defendants charged themselves with their price ; and it was for the purpose of satisfying the balance, which, deducting interest and commission, was thus created in favor of the plaintiffs, that they purchased and remitted the bills, the dishonor of which has led to this controversy. Our opinion is, that this remittance was not made by them in their capacity of agents, nor covered by their supposed instructions; but, on the contrary, was a remittance which, upon well settled rules of law, unless it proved to be effectual,, they were bound to make good. It was emphatically a remittance at their own risk, not at that of the plaintiffs.
*259 For reasons that we shall not now attempt to explain, we exceedingly doubt whether a del credere agent may, in his discretion, charge himself immediately with the price of goods sold upon credit; but, admitting that, by his voluntary act, he may thus constitute himself the debtor of his principal, it is plain that the remittance which he then makes is of his own funds, not of those of his principal, received as the actual proceeds of the sale. It follows that the remittance is made by him, not in the necessary discharge of his duties, or in the proper execution of his trust as agent, but for the sole purpose of satisfying a personal debt, which, without necessity and without request, he chose to assume. It is a novel doctrine that a debtor may, in any case, by remitting a bill to his creditor, impose upon him the risk of its ultimate payment; and the doctrine is as unreasonable as it is novel.
Let it not be said that the principal, if not willing to treat the remittance as an absolute payment, is bound to return the bill, and makes it his own by retaining it: The conclusive answer is, that he is not bound to know, or even suspect, that his reception of the bill was intended to operate as an immediate payment; but, on the contrary, has the right to believe that the bill was transmitted only as a collateral security. As such, he is justified in returning it when it proves unavailable, and justified in then demanding payment of the debt it was remitted to cover.
In this State the law is settled, by a long series of decisions, that the acceptance, by the creditor, of the bill or note of a third person, can never be held to cancel an existing debt, unless it appears that, by the express agreement of the parties, it was received as an absolute and final payment.
In other cases, and even where a receipt in full has been given, the bill or note is held to have been received merely as a collateral security, which, unless realized, creates no bar to a subsequent recovery of the original debt. (Toby v. Barker, 5 John. 68; Muldon v. Whitlock, 1 Cowen, 290, 308; State Bank v. Fletcher, 5 Wend. 85; Olcott v. Rathbone, idem. 490; Hays v. Stone, 9 Hill, 128; S. C. in Error; 3 Denio, 575; Van Eps v. Dillaye, 6 Barb. 244.)
Upon the fullest reflection, we can perceive no ground for *260 excepting the present case from the operation of these rules. Had the term of credit upon the sale of the goods expired, and the purchaser had then failed to pay, the defendants, by force of the del credere, would have been immediately liable ; and none can doubt that a remittance, then made by them, to cover the price of the goods, would have been made for the purpose of satisfying their personal' debt. We can make no distinction between a debt, which, by anticipation, they chose to assume, and a debt which would have been imposed upon them by the terms of their contract. In both cases it is equally true, that the funds remitted are not the actual proceeds of the sale, which, as such, the defendants, as agents, were bound or authorized to remit. In both, the funds are those of the agents, not of the principals.
We remark, in conclusion, that the reason why an exchange commission was not charged by the defendants is now apparent ; making the remittance, not as agents, but as debtors, not under their agreement, but as a voluntary act, they had no right to charge the commission.
Believing, for the reasons that have now been stated, that the referee has erred, and that the judgment entered upon his report must therefore be reversed, we deem it needless to inquire, whether, if these reasons had not existed, it must not have been held, that the defendants had rendered themselves liable by endorsing generally, and not as agents, or without recourse, the bill which they remitted. It is sufficient for the present to say, that we are not to be considered as assenting to the propriety of the decision of the Supreme Court of Pennsylvania, in Sharp v. Emmet, 5 Wharton E. 288; but, on the contrary, are disposed to think that the position of Judge Story, “ that when an agent, employed to jmrch^se bills, makes them payable to his own order, and then endorses and remits them to his principal, he is liable thereon, as endorser, to his principal, as well as to third persons” (Story on Agency, sec. 269, 2d ed. page 332), is fully sustained by the authorities to which he refers. Goupey v. IIarden, 7 Taunt. 159, is an express decision; and Lefevre v. Lloyd, 3 Taunt. 149; Sampson v. Jevan, 3 Camp. 291; and Leadbetter v. Farren, 5 M. & Sel. 345, involve the principle. There is doubtless an excep *261 '.ion, where, with the knowledge and assent of the principal, Jie agent endorses the hill, for the sole purpose of facilitating its collection ; and it was upon this exception, we think, the decision in equity, in the Court of Exchequer, in Ridson v. Dilworth, 5 Price, 564, mu°t have proceeded. It is only by this explanation that the decision can be reconciled with the cases at common law.
It is doubtful whether the liability of the defendants, as endorsers, is a question properly arising under the pleadings ; and, if it exist, whether it can be otherwise enforced than in an action upon the bill itself. We therefore leave the question undecided.
The judgment at Special Term is reversed, and the order for a reference discharged, costs to abide the event. The cause must now go to a j ury; who, unless the case shall he materially altered by further evidence, must be instructed to find a verdict for the plaintiffs.