## COREY, sheriff, &c. *vs.* WHITE and others.

Where a judgment is obtained under the statute of April 25, 1832, regulating suits
on bills of exchange and promissory notes, by the holder, against the maker and
first and second endorsers, and the first endorser purchases and takes an assign-
ment of the judgment, from the holder, such purchase and assignment does not
operate as an extinguishment of the judgment, as against the maker of the note.
And the endorser, so purchasing the judgment, can wield it against the property
of the maker.

The 7th section of that act preserves the rights and responsibilities of the several
parties to negotiable paper, as between each other, to the same extent as though
the act had not been passed; saving only the rights of the plaintiff, so far as they
may have been determined by the judgment.

Prior to the act of April, 18, 1832, the holder of negotiable paper might obtain judg-
ments in separate actions, against all the prior parties, but could have but one
satisfaction, and the costs in all the suits.

Any of the prior endorsers might pay the holder, and take an assignment of the
judgments against the parties to the note or bill, antecedent to himself, and thus
reimburse himself.

The distinction between the contract raised by law between the principal and surety,
and that between the successive parties to negotiable paper pointed out.

The case of the *Ontario Bank* v. *Walker,* (1 *Hill,* 652,) explained and questioned.

The case of *The Bank of Salina* v. *Abbott and others,* (3 *Denio,* 181,) overruled.

MOTION by the plaintiff, upon a bill of exceptions, to set aside
a nonsuit, and for a new trial. The cause was tried before
GRIDLEY, Circuit Judge, at the Otsego circuit, in April, 1847.
The plaintiff, as sheriff of the county of Herkimer, claimed to
recover in trespass against the defendants, deriving his title
under a levy made by virtue of an execution issued upon a
judgment in favor of Joseph Carpenter, against Cornelius
White, Jacob J. Lints and George Tunnicliff. That judgment
was recovered upon a promissory note, made by the said Cor-
nelius White, payable to the order of the said Jacob J. Lints,
and severally endorsed by the said Jacob J. Lints and George
Tunnicliff. It was shown that after the recovery of the judg-
ment, Lints, the endorser, purchased and took an assignment
of the judgment from Joseph Carpenter the plaintiff; and he

Corey *v.* White.

claimed to enforce the judgment and execution against the property of White, the maker of the note. The circuit judge ruled that the assignment of the judgment by Carpenter to Lints, operated as a payment, and a legal extinguishment, of such judgment, so that an execution could not issue thereon; and he accordingly nonsuited the plaintiff.

*C. D. Colman*, for the plaintiff.

*H. Lathrop*, for the defendants.

*By the Court*, WILLARD, J. Prior to the act for regulating suits on bills of exchange and promissory notes, passed April 25, 1832, (*Laws of* 1832, *p.* 489,) the holder of a bill of exchange or promissory note might commence separate actions against all the antecedent parties to the bill or note, and proceed to judgment against all; but he could have but one satisfaction of his debt, and the costs in all the suits. (*Windham* v. *Withers*, 1 *Stra.* 515. *Chit. on Bills, Springfield ed. of* 1836, 570, 571.) A subsequent party might take an assignment of a judgment obtained against the maker, without extinguishing it. (*Harger* v. *McCullough*, 2 *Denio*, 119, 122.) If separate judgments were recovered against maker and endorser, the latter might pay the judgment against himself, and take an assignment of that against the maker, and enforce it by execution or otherwise. (10 *John. R.* 524. *And see* 1 *John. Cas.* 137, *in the matter of McKinley*.) It was the constant practice, and still is, for the endorser of commercial paper, when an exigency of business requires it, to pay and take up the bill or note upon which he is endorser, and prosecute the prior parties, on the instrument, one or all of them. (*Low* v. *Copestake*, 3 *Carr. &. P.* 300. *Chit. on Bills, Springfield ed.* 1836, 567. 20 *John.* 369, *per Spencer, Ch. J.* 1 *Cowen*, 387. 7 *Id.* 662.) The payment in this case merely extinguishes the liability of the party paying, to the holder. It does not impair his remedy against the antecedent parties. The same result followed, in the case of separate judgments. A judgment extinguishes

Corey *v.* White.

merely the liability of the defendant to the plaintiff, and leaves unaffected the liability of the prior parties to the defendant. A judgment has no greater effect in extinguishing a demand, than payment. If the last endorser may pay the note to his endorsee, and have recourse on the same instrument to his endorser, or the maker, as it is clear he may, there is no reason why he should not have the right to take an assignment of the judgment, against all the parties, himself among the number, and so wield it as to enforce his rights, as they stand upon the paper on which the judgment was obtained.

The main object of the statute for regulating suits on bills of exchange and promissory notes, was to diminish the amount of costs, by lessening the number of suits, when there were several parties who were required to be prosecuted separately. It altered the common law, so far as to allow the holder of the bill or note, instead of bringing separate suits against the drawer, maker, endorsers and acceptors of such bill or note, to include all or any of said parties to the bill or note in one action, and to proceed to judgment and execution in the same manner as though all the defendants were joint contractors. The seventh section of the act preserves the rights and responsibilities of the several parties to any such bill or note, as between each other, in the same manner as though the act had not been passed ; saving only the rights of the plaintiff so far as they may have been determined by the judgment. The liability to the plaintiff in the suit, of the respective makers, drawers, acceptors and endorsers, is extinguished by the judgment. The plaintiff can not, after the recovery, maintain a separate suit against either of the parties to the instrument, who are defendants in the judgment. This, however, can have no effect on the contract which exists between the prior parties to the *bill* or note, as amongst themselves. The contracts are not the same, but different. It is obvious, from the seventh section of the act, that the legislature could not have intended that a joint judgment, by the holder against the respective parties to a bill or note, should extinguish the contract which the law merchant raises between themselves.

Corey v. White.

The case of the *Ontario Bank* v. *Walker*, (1 *Hill*, 652,) seems to be against this doctrine. In that case, where a judgment was obtained against the maker and four successive endorsers, and the property of the third endorser had been seized by the sheriff on an execution, and he had paid the money to the sheriff, Mr. Justice Cowen held, at special term, that the judgment was thereby extinguished; and he denied the motion made by the endorser, for leave to sue out an execution on the judgment against the prior parties. He does not refer to the statute, or to any adjudged case, but puts the decision upon the ground of a payment by a surety, who has no remedy against his principal but for money paid, or to be subrogated in the place of the creditor by a court of equity. (*See* 6 *Paige*, 32.) That case, however, is distinguishable from the one under consideration. In that, the judgment was paid by the endorsers to the sheriff holding the execution, and was not assigned. In the present case the payment is to the party who assigned the judgment to the endorser against himself and the prior parties.

The case of the *Ontario Bank* v. *Walker* was followed by Mr. Justice Jewett, at the special term in June 1846, in the case of *The Bank of Salina* v. *Abbott and others*, (3 *Denio*, 181.) In that case, which was similar to this, the last endorser purchased and took an assignment of the judgment, which was against the maker and endorsers, and sought to enforce it, out of the real estate of an antecedent endorser; but Mr. Justice Jewett, on the application in behalf of a junior judgment creditor of that endorser, held that the assignment of the judgment operated as an extinguishment of it. And he directed a perpetual stay of the execution. He relied solely on the case of the *Ontario Bank* v. *Walker*, and repeats the same reason that Mr. Justice Cowen assigned, that *payment* of a judgment to the plaintiff or the owner, by the defendant, or by one of several defendants, extinguishes it; although such payment be made by a defendant who is a *mere surety;* and that an *assignment* by the plaintiff or owner of a judgment, to one of several defendants in the judgment, works the same consequence.

That a payment by one of several defendants to the plaintiff,

Corey v. White.

or the owner of a judgment, even if such defendant be a surety, operates at law as an extinguishment of the judgment, will not be denied. Nor will it be denied, that an assignment of the judgment, to one of the defendants, in ordinary cases, works the same consequences. But it is conceived that there is a manifest distinction with reference to the defendants' rights and liabilities among themselves, between a judgment obtained against a principal and surety, and a judgment under the statute against the different parties to negotiable paper. The former is a judgment joint at common law, without any reservation of the right of one party against the other, except what is derived through the court of chancery; the latter is a statutory proceeding, in derogation of common law, with an express reservation of the rights and responsibilities of the several parties, as between themselves. (*See Act of April,* 1832, § 7.) A *surety* to a note cannot, after paying it to the holder, maintain a suit at law against the maker, *on the same note*. His remedy at law is in an action for money paid. (*See Addison on Contracts,* 443 *to* 448.) As to the liability of sureties, &c. see *Dennis* v. *Rider,* (2 *McLean,* 451.) The endorser of commercial paper does not stand in the same relation to the principal debtor, that the surety does to his principal. It has been seen that on payment to the holder, he can maintain an action, *upon the paper,* against the prior parties. The contract which the law implies between principal and surety, is different from that raised between the maker and successive endorsers of commercial paper. A principal and his surety could always be sued jointly, at common law, when they were parties, as such, to the same instrument. The maker and endorser of a promissory note could not, at common law, be joined, for the reason that their contracts are separate and different from each other. It has been seen, that it is only by statute that they can be joined; and that statute preserves the rights of the respective parties amongst themselves, as it was before. A joint judgment against all the parties to a note, is in effect a separate judgment against each. For the purpose of saving costs and avoiding multiplicity of actions, it

is *joint ;* for the purpose of preserving the rights of the several defendants among themselves, it is *several.*

The cases decided by Mr. Justice ·Cowen and Mr. Justice Jewett were made when sitting alone, in the pressure of a special term, and in neither was the statute adverted to ; nor was the difference which exists between the liability of endorser and surety pointed out.  It is not surprising that these cases were decided upon a false analogy.  It is at best an extremely narrow view of the powers of a court of law, that will not afford the surety the same relief, by subrogation, which it is conceded a court of equity will allow.   No reason is perceived why courts of law should not in this, as they do in a variety of other cases, so wield their own judgments and process, as to protect, without circuity of action, the rights of a surety.   Mr. Justice Marcy, in *The New-York State Bank* v. *Fletcher,* (5 *Wend.* 85 *to* 89,) did not express a doubt of their power.   But without discussing this question, I am clear that there is a distinction between the cases.  (*See Cuyler* v. *Ensworth,* 6 *Paige,* 32.)

The nonsuit must be set aside and a new trial granted, with costs to abide the event.

