W. and G. GOODYEAR, appellants, *vs.* WATSON, respondent.

A surety, who pays the debt of his principal, for which he is bound, is entitled to every remedy which the creditor has against the principal.

Upon this principle the surety has the right to have the original debt assigned to him, and the instrument by which it is evidenced. And in his hands a judgment against principal and surety for the original debt, is a subsisting obligation, and may be enforced against the principal.

Accordingly, where a surety paid a judgment, recovered against himself and the principal debtor, and took an assignment thereof, for his own benefit; *Held* that such payment did not extinguish the judgment, but that after the death of the principal, payment of it according to its priority of date, out of the assets of the principal debtor, might be decreed by the surrogate.

APPEAL from the decree of the surrogate of the county of Schoharie, in the matter of the final settlement of the accounts of the administrator and administratrix of the estate of Loren Thompson, deceased.

Goodyear *v.* Watson.

On the 16th of March, 1841, a judgment was entered up in the supreme court, on bond and warrant of attorney, in favor of William Mann against the deceased and Abraham L. Lawyer, for $658,76 debt, and $16,91 damages and costs. The judgment was entered on a claim against the deceased, for money borrowed by him. Lawyer signed a joint promissory note first, and afterwards the bond, as the surety of the deceased. In January, 1845, Abraham L. Lawyer, one of the defendants in the judgment, bargained, sold and conveyed to Martin A. Watson, the respondent, all his personal property excepting household furniture, together with thirty acres of land, in consideration that Watson would pay and discharge all the debts which Lawyer owed or was liable to pay at that date, amounting to eight or nine hundred dollars. The property sold and conveyed was sufficient to pay Lawyer's debts and liabilities, and Watson went into the possession of the same. This judgment was one of the debts that Watson agreed to pay. On the 24th of December, 1844, there was due on the judgment the sum of $424,12. In February, 1845, Watson paid $250 on it; in May, 1845, $75; and on the 22d of December, 1845, the sum of $109,70, being the amount due, in full. On the last payment being made, he took from Mann an assignment of the judgment. This assignment, it was understood between Watson and Lawyer, was to be for the benefit of Lawyer ; that if any thing was finally obtained from Thompson on the judgment, it was to go to Lawyer.

The estate of Thompson was insolvent, the assets applicable to the payment of debts, and costs and expenses of final settlement, being only $392,88. The appellants were the owners of a judgment against the deceased for $27,45, docketed in the clerk's office of the county of Schoharie on the 12th July, 1841.

It was decreed by the surrogate, that the balance of the assets of the estate, after paying costs and expenses of final settlement, be paid and applied by the administrators upon the Mann judgment assigned to Watson, the same being in its order of time the first and oldest debt of record against the deceased, and then due thereon $514,68 ; that if the administrators should come to the possession of other assets, they should pay and satisfy the

Goodyear *v.* Watson.

amount legally and equitably due on said assigned judgment, and beyond the payment of the same, that they should apply the residue of the assets to the payment of the other debts of record, according to the priority thereof; and the surplus remaining after the payment of said specialties, should be applied equally on the other claims held by the simple contract creditors.

*J. H. Ramsey*, for the appellants.

*A. Taber*, for the respondent.

*By the Court*, WRIGHT, J.   The case shows that Lawyer paid or furnished the means with which the respondent satisfied the judgment held by Mann, and that an assignment was taken of the same, for his benefit.   The sum of $300 was originally borrowed from Mann by the deceased, for which he held the joint note of the decedent and Lawyer.   No part of the money went to the latter.   In March, 1841, a judgment was entered for the debt, on the joint bond and warrant of attorney of the intestate and Lawyer.   Subsequently, and in the lifetime of the deceased, the judgment was paid.   We have, therefore, the case of a judgment against a principal debtor and his surety; by which judgment, so far as the creditor was concerned, both became principal debtors.   The surety pays the judgment; and the questions arise, whether both in law and equity the judgment is to be regarded as extinguished; and the assignment, having no subsisting obligation in the hands of the surety, a mere nullity; or whether the surety has, in equity, the right as against the principal debtor, to be substituted for the creditor, and to have an assignment for his benefit and protection, not only of any independent collateral securities, but also of the original debt and the judgment by which it is evidenced.   The surrogate could properly entertain these questions; for on settling the accounts of executors and administrators, he may adjudicate and pass upon the claims of creditors legally or equitably due.   (6 *Paige*, 20.   7 *Id.* 591.)

At law, as a general principle, the payment of a judgment, by

any one of the parties bound by it, extinguishes it. The debt being paid, the title derived under the judgment has become *functus officio*, and therefore an assignment would be utterly useless. This principle has in several cases, in a court of law, been held to reach a mere surety, who pays the debt; and he has been left to his remedy against the principal for money paid, or to be subrogated in the place of the creditor by a court of equity. (*Ontario Bank* v. *Walker*, 1 *Hill*, 653. *Bank of Salina* v. *Abbot*, 3 *Denio*, 181.) In *Corey* v. *White*, (3 *Barb. S. C. Rep.* 12,) the court concedes the general principle even as to payment by a surety, in ordinary cases; but draws a distinction in favor of an accommodation indorser of negotiable paper, sued under the act of April, 1832, authorizing a joint judgment, against all the parties to the original instrument.

But in the view of a court acting on the principles of enlarged equity, should the judgment be held to be extinguished as against the principal debtor, when payment is made by the surety? It is but naked equity that a person bound for another as a mere surety, and paying off the debt, should be reimbursed by his principal, and should be put in the place of the creditor, and be entitled to every remedy which he has to enforce every security, and all means of payment. Rules, merely technical, should not be permitted to interfere, contrary to the intentions of the parties, as well as the demands of justice, to shield the debtor from the moral obligation to reimburse the party bound for him, and paying his debt. By the civil law, payment by the surety did not operate to extinguish the original debt; but it held the transaction between the surety and the creditor, according to the presumed intention of the parties, to be not so much a payment as a sale of the debt. (*Stor. Eq. Jur.* § 499, *and note.*) "It is not wonderful," says Judge Story, "that courts of equity, with this enlarged doctrine in view, which is in entire conformity to the intention of the parties, as well as the demands of justice, should have struggled to adopt it into the equity jurisprudence of England. The opposing doctrine is founded more on technical rules than on any solid reasoning, founded in general equity." It is a general and well established principle in the English courts of equity, in

Goodyear v. Watson.

our own and in many of our sister states, (using the language of Sir Samuel Romily, in *Craythorne* v. *Swinburne*, (14 *Ves.*160,) cited with approbation by Lord Eldon,) that "a surety will be entitled to every remedy which the creditor has against the principal debtor, to enforce every security and all means of payment; to stand in the place of the creditor, not only through the medium of contract, but even by means of securities entered into without the knowledge of the surety, having a right to have those securities transferred to him, though there was no stipulation for that; and to avail himself of all those securities against the debtor." "That a surety," says Ch. J. Spencer, in *Clason* v. *Morris*, (10 *John.* 539,) "who pays a debt for his principal has a right to be put in the place of a creditor, and to avail himself of every means the creditor has to enforce payment against the principal debtor, is a principle which I had supposed incontestable;" and he cites, with full approval, the case of *Parsons* v. *Briddock*, (2 *Vernon*, 608.) "The right of substitution," says Mr. Justice Johnson, in delivering the opinion of the court of appeals in *Mathews* v. *Aikin*, (1 *Comst.* 595,) "does not depend at all upon any request or contract on the part of the debtor with the surety, but grows rather out of the relations existing between the surety and the creditor, and is founded not upon any contract, express or implied, but springs from the most obvious principles of natural justice." The rule that the surety who pays off the debt of the principal, for which he is bound, is entitled to every remedy which the creditor has against such principal, has been thought fully to justify and support the conclusion that he has the right to have the original debt assigned to him, and the instrument by which it is evidenced; and that in the hands of the surety, a judgment against the principal, for the original debt, is a subsisting obligation, and may be enforced against the principal. (*Parsons* v. *Briddock*, 2 *Vernon*, 608. *Ex parte Crisp*, 1·*Atkins*, 135. *Robinson* v. *Wilson*, 2 *Madd.* 434, and cases cited. *Clason* v. *Morris*, 10 *John.* 524. *State Bank* v. *Fletcher*, 5 *Wend.* 85. *Storms* v. *Thorn*, 3 *Barb. S. C. Rep.* 314. *Cheesebrough* v. *Millard*, 1 *John. Ch.* 409. *Sprigg* v. *Broman*, 6 *Lou. Rep.*

206. *Eddy* v. *Traver*, 6 *Paige*, 521. *Story's Eq. Jur.* § 499, *and cases cited.*) The English equity courts and our own, until a recent period, have followed out the Roman law to its full extent. Such is the current of our own decisions up to the present time, and such were those of England up to a period when they ceased to have controlling force upon our courts. Lord Eldon, however, in the case of *Copis* v. *Middleton*, (1 *Turn. & Russ.* 224,) was of the opinion that the general rule that in equity the surety is entitled to the benefit of all the securities which the creditor has against the principal, must be qualified by considering it to apply to such securities as continue to exist, and do not get back, upon payment to the person of the principal debtor; and Lord Brougham, in *Hodgson* v. *Shaw*, (3 *Mylne & Keen*, 183,) adopts the rule in its modified form, and attempts to show that it is consistent with the general language of the authorities, that the surety paying is entitled to every remedy which the creditor has. The whole of their reasoning proceeds upon the narrow and technical ground, that by the payment by the surety, the original debt is extinguished; instead of regarding the transaction between the surety and the creditor, as it is evidently intended by them, rather a sale of the debt than a payment. I find no case in our own courts of equity where so mere a technicality has been permitted to defeat the demands of justice; on the other hand, the leading case of *Clason* v. *Morris* maintains the contrary doctrine. The counsel for the appellants contends that that and others cited were cases of separate judgments, against principal and surety, and in that respect are distinguishable from the present case: but Lord Eldon modifies the rule solely on the technical ground that payment of the original debt extinguishes it. In *Clason* v. *Morris*, separate judgments were recovered for the same debt, against the principal and his sureties. The trustees paid the debt, and took an assignment of the judgment against the principal. Here the original debt was paid by the surety, and technically both it and the judgment against the principal were extinguished. The reason of the modern modified rule would be as fairly applied as though but one judgment had been recovered against the surety and the principal

Goodyear *v.* Watson.

debtor. Yet the court of errors held that as between principal and surety, the judgment was not extinguished by the payment, but that in the hands of the surety, it was available against the debtor. I think, therefore, upon the principles of enlarged equity, and the decisions of our own courts acting upon them, payment by Watson as the trustee of Lawyer, the surety, of the Mason judgment, did not extinguish it, so that the assignment in the hands of Lawyer's trustee, could not have, in equity, any subsisting obligation; and that the decree of the surrogate adjudging payment of it according to its priority of date, out of the assets of the principal debtor, was not erroneous.

There is no force in the point that the surrogate should have decreed all the debts against the decedent to be paid proportionably, without reference to their dignity or priority of right at law. The general doctrine in chancery, that equality is equity, and that assets are to be distributed equally, has no application to a case where the statute commands a preference to be given. (2 *R. S.* 87, § 29, *sub.* 3.) An act of the legislature is as binding in equity as at law.

In the progress of the hearing, an objection was raised against the surrogate taking further cognizance of the respondent's claim, on the ground that the surrogate was related to Watson's wife. No proof was offered as to the affinity, and the objection seems, after some conversation, to have been abandoned.

The decree of the surrogate should be affirmed.

[ALBANY GENERAL TERM, December 1, 1851. *Parker, Harris* and *Wright,* Justices.]