## SUPREME COURT.

### John Alden agt. Anson Clark, Henry Tifft, and George Bradley.

On a judgment against *principal* and *surety*, the surety may pay the plaintiff the amount of the judgment, and take an assignment of it to himself, and enforce it against the principal. Such payment, being now construed as made in *equity*, does not satisfy or extinguish the judgment as to the principal.

The writ of *scire facias*, both as a public and private remedy, is entirely abolished by the Code.

In no case, whether more than five years have elapsed or not, since the rendition of the judgment, should *execution* be permitted to issue, against the property of a deceased judgment debtor, under the act of 1850, chapter 295, without leave of the court, upon due notice.

Such application should be upon affidavit, setting forth all the facts, together

with the surrogate's permission. An order should be made for all persons interested in the estate to show cause, at a special term, why execution should not issue; and also directing how, and on whom, such order should be served. (*Code*, § 284.)

*Sandy Hill General Term, January,* 1855.

HAND, CADY, ALLEN and JAMES, Justices.

APPEAL from an order of the Washington county special term, on a motion for leave to issue execution against the estate of a deceased judgment debtor.

The plaintiff, Alden, in 1847, obtained a judgment in the supreme court against all the above-named defendants, upon a note made by Clark, and signed by the others as sureties for his benefit. (After judgment and execution, Tifft and Bradley paid plaintiff the amount of the judgment, and took an assignment to Bradley.) After the judgment, and about seven years since, Clark died, leaving real estate. Bradley (the assignee) now moves, on the original judgment, for leave to issue execution against Clark, under the act of 1850, (chapter 295,) that he may enforce the same against his real estate.

The motion papers show that no letters of administration or testamentary had been issued upon Clark's estate, nor had any permission been granted for an execution to issue by the surragate. Notice of this motion was also served without any order or direction from the court.

A. D. WAIT, *for motion.*

HUGHS & NORTHRUP, *opposed.*

By the court—JAMES, Justice. In the consideration of this motion several important questions arise.

The first is, whether the judgment upon which this motion is founded was not satisfied and extinguished by payment of its amount to the plaintiff, and his assignment and transfer thereof to one of the defendants.

Formerly, the payment of a judgment to the plaintiff, by one of several co-defendants, operated, at law, to satisfy and extinguish such judgment; and an assignment of the same to one of several co-defendants produced the same result. In equity,

however, the rule was different, and that rule has been adopted by our supreme court, under its present organization and union of law and equity powers. This rule was applied by the court of this district in *Corey* agt. *White*, (3 *Barb. Rep.* 12,) in a case where judgment had been rendered against maker and endorser under the act of 1832—the endorser having purchased the judgment, and taken an assignment of it in his own name. Also in the third district, in the case of *Goodyear* agt. *Watson*, (14 *Barb.* 481.) It was there held that a surety, paying a judgment rendered against himself and principal, and taking an assignment to himself, did not satisfy or extinguish the judgment as against the principal. This doctrine proceeds upon the principle that the relation of principal and surety exists, and continues after judgment; and that payment by the surety entitles him to be subrogated to all the rights and remedies possessed by the creditor against the principal debtor.

In this case there is no dispute about the facts. It is conceded that Clark was the principal debtor, and Tifft and Bradley but sureties; and it is not claimed that Clark has ever paid or satisfied any part of the debt. The sureties have satisfied the plaintiff, and taken an assignment of the judgment to themselves. If it is permitted to stand, they may be able to indemnify themselves; if not, they may be remediless. To hold it valid, would protect right, promote justice, and prevent circuity of action, and wrong no one. The case cannot be distinguished, in principle, from those of *Corey* agt. *White*, and *Goodyear* agt. *Watson*. For these reasons, I think the equity rule should prevail, and the judgment held valid and subsisting against the estate of Clark, capable of being enforced in the hands of the sureties, the same as if owned by the original plaintiff.

The next question presented for consideration, is the right to issue the execution asked for upon motion.

Before the Code, in case of the death of a debtor, after final judgment, the mode of proceeding was by *scire facias*. Has that remedy been abolished? Section 428 of the Code so declares, and provides that the remedies heretofore obtainable in

Alden agt. Clark, Tifft, and Bradley.

that form may be obtained by civil action under the provisions of that chapter. It is however insisted, that § 428 only abolishes the writ as a public remedy; and the language of the section, the reference to the other provisions of the chapter, and the character of those provisions, go far to sustain that view. But Justice MARVIN, in *Cameron* agt. *Young*, (6 *How.* 372,) held, that as a *scire facias* was an action, it was abolished by § 69 of the Code, in which decision I fully concur. That a *scire facias* was an action, is sustained by *Co. Lit.* 290, *b*, 291; *Wils. Rep.* 251; 1 *Tenn. Rep.* 267; and 2 *Tenn. Rep.* 46. It could be pleaded to the same as another action; and a release of all actions was held a bar to the writ.

It was properly an action of record. It was either of a private or a public nature. As a private remedy it was incidental to other actions—being founded upon matter of record in such actions. It lay, 1st, To have execution, or for some other purpose, as between the original parties. 2d. To have execution against bail, who had become liable for the debt of their principal. 3d. Upon judgment upon the introduction of new parties; either when a party dies after interlocutory judgment, for an assessment and judgment; or to have execution on final judgment when new parties were introduced, by death, marriage, or other event.

Since the Code, it has been several times held that the writ of *scire facias*, to obtain execution on a judgment when both parties are living, is entirely suspended by the Code; (*Catskill Bank* agt. *Sanford*, 4 *How.* 100, 101;) and there seems to be no doubt but §§ 283, 284 of the Code, were intended as a substitute for the writ of *scire facias* in such cases, where the right to issue execution had been lost by the lapse of time.

A *scire facias* to obtain execution when a defendant died after final judgment, and before execution, seems also to have been swept out of existence by § 69. Section 71 declares, that no action shall be brought upon a judgment of a court of record between the same parties without leave of the court; but, as appears by the codifiers' notes, chapter 2 of title 12, part 2, of the Code, § 376, &c., was enacted to give a remedy

against joint debtors not served with process, and heirs, devisees, legatees, &c., of deceased judgment debtors, and at the same time prevent the abuse provided against by § 71. The proceedings provided by that chapter bear a strong similarity to the action of *scire facias* to obtain execution upon final judgment after the death of the judgment debtor, and was, no doubt, intended as a substitute therefor.

It may, therefore, be safely affirmed that the writ of *scire facias*, both as a public and private remedy, is entirely abolished by the Code. (§§ 69, 284, 376 to 381, 428.)

Chapter 2, title 12, § 376, provides for summoning the heirs, devisees, or legatees, of a deceased judgment debtor, or the tenants of real property owned by him, and affected by the judgment after the expiration of three years from the granting of letters, &c., on the estate; and for summoning the personal representatives at any time within one year after their appointment.

Under this section it is necessary that letters testamentary, or of administration, should issue before any steps could be taken by the judgment creditor. This chapter was a part of the original Code of 1848. In the revision of 1849, it was somewhat amended, and enacted as it now stands.

The legislature, it seems, was not satisfied with its provisions, and the next year, 1850, undertook to provide for the creditors of deceased judgment debtors, whose judgments were liens upon property, a more simple and expeditious mode of obtaining satisfaction of their judgments, and enacted the 295th chapter of the laws of 1850.

By that act the creditor is not required to wait until letters are granted against the deceased debtor's estate, as in § 376 of the Code; but one year after the death of the judgment debtor, upon permission granted by a surrogate having jurisdiction to grant administration, &c., on the estate, execution is permitted to issue in the same manner, and with the same effect, as if the judgment debtor were still living. So far as anything has come to my knowledge, this act is yet in full force and effect; and while it so remains, it is the duty of the courts to give

those seeking to avail themselves of it, the full benefit of its provisions.

This act is very brief, and does not, in direct terms, provide for notice to any person or party. But as the plaintiff's remedy is to be reached by the process of the courts, and as the courts have at all times control of process issued therefrom, care should be taken that such process is not issued without proper notice to all those interested, that they may have an opportunity to show cause. In no case, whether more than five years have elapsed, or not, since the rendition of the judgment, should execution be permitted to issue under that act, without leave of the court. The fair inference, from the language of the act, is, that application to the court for leave was contemplated.

It says, execution may issue in like manner as if defendant were living; and although if living, and five years had not elapsed, no application to the court would be necessary; yet the death of the defendant, having suspended the plaintiff's right to have execution, without application to the court, this act, after the lapse of one year, puts the plaintiff in a position to ask the court to declare the suspension of that right at an end, and that execution may issue in like manner as if the defendant were living. That application should be upon affidavit setting forth all the facts, together with the surrogate's permission. On presenting such papers to the court, an order should be made for all persons interested in the estate to show cause, at a special term, why execution on such judgment should not issue, and also directing how, and on whom, such order should be served. (*Code*, § 284.)

In the case under consideration, application to the court was absolutely necessary, more than five years having elapsed since judgment; and application was accordingly made under § 284. But it is objected that the notice of the motion was not served in accordance with the terms of that section, and that it could not be, because the mode of service there prescribed is not adapted to such a case. Let us compare the act of 1850 with this section, and see if there is any such difficulty. The act says, " Execution may be issued, and executed in the same

Alden agt. Clark, Tifft, and Bradley.

manner, and with the same effect, as if the judgment debtor were still living." Section 284 says, "Execution can be issued only by leave of the court, upon motion, with personal notice to the adverse party, unless he be absent, or non-resident, or cannot be found to make such service; in which case such service may be made by publication, or in such other manner as the court shall direct." That personal service in this case cannot be made is conceded; but as the act authorizes the execution to issue in the same manner as if the defendant were living, and if living, and personal service could not be made, the court is authorized to direct the mode of service. I can see no difficulty in the court's exercising the power thus given by that section, and directing how those interested shall be notified. The manner I have before suggested.

But in this case the notice was neither personal, by publication, nor under the direction of the court, and consequently entirely insufficient: neither was permission obtained from a surrogate having jurisdiction to grant letters, &c. I regard such permission in the nature of a condition precedent. For these two reasons the order of the special term must be affirmed.

It is objected against the act of 1850, that persons not parties to the record should not have these rights to real estate tried upon affidavit, unless by the plain direction of the legislature. I concede this, and in any case that may arise under the provisions of this act, and the Code, that difficulty can be obviated. If, upon any motion or application for execution, questions of fact arise, § 271, sub. 3, of the Code, makes ample provision for a trial of such fact before a referee, and when all parties can test the plaintiff's right as fully as by the former action of scire facias.

As this proceeding is new, and the practice entirely unsettled, the order is affirmed without costs.

HAND—*Dubitante.*