978 F.2d 1266
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mary POSTMA, individually, and as administratrix of the
Estate of her deceased daughter, Catherine
Michelle Braley, Plaintiff-Appellee,
v.
Robert WATERS, et al; Robert Mallon; Michael Turner,
Defendants-Appellants.
Linda POSTMA, Plaintiff-Appellant,
v.
Robert MALLON, et al., Defendant-Appellee.
Linda POSTMA, Plaintiff-Appellee,
v.
Michael TURNER; Robert Mallon; Robert Waters, Defendants-Appellants.
 Nos. 90-55614, 91-55556 and 91-55991.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 6, 1992.
Decided Nov. 5, 1992.
 
 Before JAMES R. BROWNING, DAVID R. THOMPSON and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We affirm the denial of attorney's fees and sanctions, affirm the grant of summary judgment to defendants Turner and Waters, but reverse the grant of summary judgment to defendant Mallon.[1]
 
 I.
 
 3
 The district court granted summary judgment on the diverse state claim in No. 91-55556 because "plaintiff has failed to demonstrate that there is a genuine issue of material fact with respect to the element of causation, i.e., that any of the defendants caused the death of Catherine Braley."
 
 
 4
 The sworn declarations of defendants Turner and Waters that they left Mallon alone with Braley outside the bar are uncontradicted, and there are no inconsistencies in their testimony to impeach their credibility. Nor is there any evidence they should have been aware Braley was in any danger from Mallon or any other person. The only possible evidence against Turner or Waters is Harold Hobson's recollection that he may have heard a second male voice outside his window and a reference to the name "Louis," but we conclude that no fair-minded jury could return a verdict against them based solely on Hobson's recollection.
 
 
 5
 We reverse the grant of summary judgment to defendant Mallon because we conclude a fair-minded jury could decide, under a preponderance of the evidence standard, that Mallon caused Braley's death. The record establishes that Mallon had been drinking steadily for at least ten hours, that he may have exposed himself at the bar, and that he became involved in a dispute with another patron to whom he had made derogatory remarks. From this evidence, a jury could conclude Mallon lacked self-control and was in a violent mood. Mallon left the bar with Braley (who was also drunk) between 11:30 p.m. and midnight. Plaintiff's medical expert stated "it would be reasonable to assert that Ms. Braley died at midnight." The jury could conclude from this evidence that Mallon was with Braley at the approximate time of her death. Noel Warnick stated he thought Waters was at the bar with another officer from the narcotics unit named "Louis." Although none of the defendants actually had the name "Louis" and each denied using that name, a jury could infer one of the defendants was using "Louis" as an assumed name. Both Hobson and Pearl Kelly stated they may have heard the woman outside their windows use either the name "Louis" or another name redacted from the police report. Kelly also testified the couple quarrelled in a manner indicating they knew each other. Braley's body was found about one block from the place Mallon testified Braley left Mallon's parked car. Braley was choked in a manner plaintiff's expert testified was "consistent with ... application of a chokehold." Moreover, Mallon's account of the evening's events developed and changed in a manner that would allow a jury to doubt his credibility. When he spoke with Turner on the day following Braley's death he denied having sex with Braley, claimed he had slept alone in his car for an hour and a half, and stated he arrived home at 3:00 a.m. The next day, when interviewed by investigators, he admitted he was very drunk, claimed Braley exposed her breasts at the bar, admitted engaging in oral sex with her in the car, and claimed she got upset and left the car at about 1:00 a.m. after refusing his offer of a ride. He did not mention his earlier claim that he slept in his car, and stated he arrived home, not at 3:00 a.m., but between 1:30 and 2:00 a.m., and "closer to 2:00." In a second statement to investigators, Mallon admitted engaging in intercourse with Braley after she performed oral sex on him. He claimed they then drove to another location and attempted again to engage in oral sex, but he was unable to achieve an erection and Braley declared she had to leave and staggered away. Mallon also stated he arrived home, not at 3:00 or 2:00 a.m., but at 1:00 a.m. He denied telling Turner anything about what he and Braley had done. In his later deposition, Mallon claimed Braley left his car "somewhere about 11:50 to midnight."
 
 
 6
 A jury could conclude that inconsistencies in Mallon's statements reflected an effort to adjust his account to the emerging evidence. The time he last saw Braley and the time he arrived home were relevant to whether he was with Braley at the time of her death. Whether he engaged in intercourse with her was relevant to the chemical analysis of his body fluids and those found on Braley's person, as well as to whether Braley was raped as well as murdered. His later claim that Braley exposed her breasts could have been an attempt to paint Braley as reckless or as seeking sexual relations. Mallon appears to have backed away from his initial statement that Braley was upset with him, instead expressing puzzlement over her behavior in later statements, perhaps to avoid an inference they had engaged in a dispute that escalated into drunken violence.
 
 
 7
 In sum, a jury could find that Mallon was in a violent state of mind, that he had the motive to kill Braley based on her reaction to his inability to perform sexually, that he had the opportunity to kill her because he was alone with her at the approximate time of her death, and that he was capable of causing her death. Combined with the inconsistencies in Mallon's various accounts of the evening, a fair-minded jury could find that Mallon killed Braley--not beyond a reasonable doubt but by the greater weight of the evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
 
 II.
 A.
 
 8
 A district court may award fees to a prevailing civil rights defendant under 42 U.S.C. § 1988 if the action is "meritless in the sense that it is groundless or without foundation," Hughes v. Rowe, 449 U.S. 5, 14 (1980), or "the plaintiff continued to litigate after it clearly became [groundless]," Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978). "The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." Hughes, 449 U.S. at 14.
 
 The district court found the complaint was
 
 9
 neither "frivolous" nor filed for an "improper purpose".... [G]iven the difficulty of acquiring sufficient information with respect to claims of this kind, the Court cannot conclude that the allegations of the complaint were "frivolous".... Moreover, the court does not find that plaintiff continued to litigate this case at a time when it was "clear" that the claims were groundless.[2]
 
 
 10
 The determination whether an officer acted under color of law is fact specific and focuses on the nature of the conduct, not whether the officer was on duty. Traver v. Meshriy, 627 F.2d 934, 938 (9th Cir.1980); Stengel v. Belcher, 522 F.2d 438, 441 (6th Cir.1975). When plaintiffs filed their complaints, they knew and alleged that Braley left the bar in the company of the defendants, all of whom were members of the narcotics unit, that she was killed shortly thereafter, and that she had been strangled in a manner consistent with a chokehold. Although it is a close question, we conclude the district court did not abuse its discretion when it found that, because the remaining facts were in the possession of the defendants and the Los Angeles Police Department, plaintiffs made a non-frivolous claim that defendants caused Braley's death while acting under color of law.
 
 
 11
 Defendants' argument that plaintiffs continued to litigate their § 1983 claims after those claims clearly became groundless is weaker. Discovery revealed that all three defendants drove to the bar in official vehicles; Mallon's gun was in his car; Waters gave his business card to at least one patron; and defendants were involved in and ultimately mediated a dispute among patrons at the bar. These facts provided some support for plaintiffs' allegation that defendants acted under color of law. Although the evidence was not sufficient to withstand summary judgment on the § 1983 claims, the district court did not clearly err when it determined that plaintiffs did not continue to litigate the color of law issue after it was clearly groundless.[3]
 
 B.
 
 12
 Sanctions must be imposed under Fed.R.Civ.P.11 if a pleading is either frivolous or filed for an improper purpose. Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir.1990) (en banc). A complaint is frivolous if, considered objectively, it is "both baseless and made without a reasonable and competent inquiry." Id. In determining whether the signer made an objectively reasonable inquiry, the court must consider several factors, including whether the relevant facts were in the possession of the opposing party. Id. at 1364.
 
 
 13
 Because plaintiffs' § 1983 claims were not frivolous, Rule 11 sanctions are inappropriate. Id. at 1362. Because we reverse the grant of summary judgment to defendant Mallon on the state wrongful death claim, Rule 11 sanctions are also inappropriate for that claim.
 
 
 14
 Defendants argue that naming Turner and Waters in the complaint along with Mallon was frivolous because there was no evidence they had been with Braley after leaving the bar. When plaintiffs filed their complaints, they knew only that Braley left the bar in the company of all three defendants, was seen outside with all three, and was later killed. The record does not indicate plaintiffs knew Braley eventually left with Mallon, or that Turner and Waters had nothing further to do with Braley.
 
 
 15
 The district court demonstrated it was willing and able to sanction both sides when they stepped beyond the bounds of zealous advocacy. The court imposed sanctions four times against plaintiffs' counsel and twice against defendants' counsel. The court's finding that plaintiffs otherwise litigated in good faith and that their pleadings were not frivolous is not clearly erroneous, and the court's denial of Rule 11 sanctions was not an abuse of discretion.
 
 C.
 
 16
 Defendants contend the district court abused its discretion when it denied their request in No. 91-55991 for fees under 28 U.S.C. § 1927. An award of fees under § 1927 requires a finding of recklessness or bad faith. Kanarek v. Hatch, 827 F.2d 1389, 1391 (9th Cir.1987). The district court found that "plaintiff did not file or conduct this action in bad faith, and plaintiff's counsel did not unreasonably multiply these proceedings."
 
 
 17
 Defendants cite eight examples of allegedly unreasonable and vexatious multiplication of the proceedings. Two of the eight examples involve discovery requests covered by Fed.R.Civ.P. 26(g). When violations of a discovery rule may be sanctioned under Rule 26(g), sanctions under § 1927 are not appropriate. Matter of Yagman, 796 F.2d 1165, 1187, modified, 803 F.2d 1085 (9th Cir.1986). Plaintiffs' counsel has already been sanctioned $3,500 for the conduct complained of in a third example. We have carefully examined the record relating to the remaining five examples and conclude the court did not clearly err in finding no bad faith. In light of the ill-will between counsel, the repetitious use by both sides of motions for sanctions, and the court's decisions awarding sanctions in the course of the proceedings, we conclude the court did not abuse its discretion in declining to award fees.
 
 D.
 
 18
 Finally, defendants claim the district court abused its discretion when it declined to award attorney's fees in No. 91-55991 under the bad faith exception to the American Rule. An award of fees for bad faith ordinarily relates to conduct during the litigation, Association of Flight Attendants v. Horizon Air Indus., Nos. 90-35807, 91-35246, slip op. 11773, 11787-92 (9th Cir. Oct. 1, 1992), and " 'can be imposed only in exceptional cases and for dominating reasons of justice.' " Id. at 11792 (citation omitted). The district court found that "plaintiff did not file or conduct this litigation in bad faith."
 
 
 19
 Defendants argue the court should have found bad faith because plaintiff's counsel stated he would provide additional evidence but ultimately failed to do so. We have already held the district court did not clearly err when it found plaintiff's counsel did not act in bad faith. See § II.C. In any event, this is not an exceptional case and "dominating reasons of justice" do not compel an award of fees under the bad faith exception to the American Rule.
 
 
 20
 Affirmed in part, reversed in part, and remanded. Each side will bear its own costs of appeal.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We previously affirmed the grant of summary judgment against Mary Postma on her 42 U.S.C. § 1983 claim in an unpublished disposition. Linda Postma does not appeal the dismissal of her identical § 1983 claim
 
 
 [2]
 The district court cited Hughes v. Rowe in denying fees in No. 91-55991, but provided no statement of reasons in No. 90-55614. Defendants contend the court applied the wrong standard and refer to a hearing in which the court suggested it was required to award fees to defendants unless there were exceptional circumstances in favor of denying such an award. Even if the court did apply this standard, the error is harmless because this standard is more favorable to defendants than the standard established in Hughes v. Rowe. In any event, we conclude on the whole record that the district court applied the proper legal standard in both cases
 
 
 [3]
 Defendants suggest the grant of summary judgment on the § 1983 claims in both cases supports an award of fees. We regularly reverse awards of fees or affirm the denial of fees against plaintiffs who have lost § 1983 cases on summary judgment. See Barry v. Fowler, 902 F.2d 770, 773 (9th Cir.1990); Thomas v. Douglas, 877 F.2d 1428, 1434 n. 8 (9th Cir.1989); Mitchell v. L.A. Community College Dist., 861 F.2d 198, 202 (9th Cir.1988)