**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 95-5280

JIMMIE ROSS BLALOCK,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 95-5295

LEE ROY BLALOCK, JR., a/k/a Pete,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
William L. Osteen, Sr., District Judge.
(CR-94-141)

Argued: April 5, 1996

Decided: May 20, 1996

Before MURNAGHAN and LUTTIG, Circuit Judges, and
MICHAEL, Senior United States District Judge for the Western
District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Anthony Wayne Harrison, Jr., HARRISON, NORTH, COOKE & LANDRETH, Greensboro, North Carolina; Daniel Smith Johnson, Winston-Salem, North Carolina, for Appellants. David Bernard Smith, Assistant United States Attorney/Senior Litigation Counsel, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Walter C. Holton, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants Jimmie Ross Blalock and Lee Roy Blalock, Jr., were convicted by a jury of conspiring to possess and distribute marijuana. On appeal, both Appellants have argued that the district court clearly erred when it calculated the amount of drugs attributable to them and when it enhanced their sentences for possession of a weapon. Lee Roy Blalock has further contended that the district court erred when it denied his motion for judgment of acquittal and when it held that the Double Jeopardy Clause did not bar the government's prosecution of him, and that the district court both clearly erred and abused its discretion when, pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence, it permitted testimony concerning an out-of-court statement made by one of the conspirators. Finding their contentions lacking merit, we affirm Appellants' convictions and sentences.

I.

On June 1, 1994, a federal grand jury returned an indictment charging Appellants with conspiring to possess and distribute more than 1,000 kilograms of marijuana in violation of 21 U.S.C.

2

§§ 841(b)(1)(A), 846 (Supp. 1996). Lee Roy Blalock filed a motion to dismiss the indictment as it applied to him, arguing that he had already been punished for his actions when he forfeited to the United States $45,512 and a 1990 Cadillac in civil forfeiture proceedings and that prosecution on the grounds stated in the indictment would therefore violate the Double Jeopardy Clause. The district court denied the motion, holding that Blalock was not being punished twice for the same offense: the civil forfeitures had occurred as a result of his alleged violation of money laundering statutes, rather than as a result of the drug offenses for which he had been indicted.

A jury trial commenced on October 3, 1994. The government presented evidence suggesting the existence of a conspiracy between Jimmie, Lee Roy, Robbie, and Adam Blalock, Dennis Gale, Pam Beauchamp, Eddie Kyle, and possibly others, to obtain marijuana from Mexico and elsewhere for local distribution. Witnesses called by the government indicated that, over a period of several years, hundreds of bales of marijuana were delivered to the conspirators and that the marijuana frequently arrived in trucks that had been fitted with secret compartments for just that purpose. On October 11, the jury returned guilty verdicts against both defendants. Jimmie Blalock and Lee Roy Blalock were subsequently sentenced to 200 months and 160 months in prison, respectively. The instant appeals followed.

II.

A.

On January 21, 1992, the United States initiated two civil forfeiture actions pursuant to 18 U.S.C. § 981(a)(1)(A) against property owned by Lee Roy Blalock: a 1990 Cadillac and $104,524 in United States currency. The verified complaints alleged that both the car and the currency were "property which was involved in and facilitated transactions, or which represent[ed] the gross receipts obtained directly or indirectly as a result of transactions, in violation of 18 U.S.C. §§ 1956(a)(1) and 1957, and property traceable to such property." Internal Revenue Service Special Agent Ted E. Warren filed the supporting affidavits, stating a belief that Blalock had been involved in the trafficking of large quantities of marijuana; that substantial amounts of currency had been acquired as a result of that activity; and

that a loaded weapon, marijuana, and more than $104,000 in currency had been found in Blalock's 1990 Cadillac after he was stopped for speeding. The parties later entered a settlement, under which the vehicle and $45,512 were forfeited to the United States and $59,012 was returned to Blalock. Blalock asked the district court to dismiss the subsequent criminal indictment, arguing that, in light of the civil forfeiture, his prosecution on the conspiracy charges violated the Double Jeopardy Clause of the Fifth Amendment.[1]  The district court rejected that argument and refused to dismiss the indictment. We review the matter de novo. Thomas v. Commissioner, I.R.S., 62 F.3d 97, 99 (4th Cir. 1995).

The general principles governing such double jeopardy claims are fairly well established. "[T]he Double Jeopardy Clause protects against . . . multiple punishments for the same offense." United States v. Halper, 490 U.S. 435, 440 (1989). The Halper Court observed that "[t]he notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law," id. at 447-48, and that a civil or criminal "sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment"--namely, retribution or deterrence, id. at 448. To determine whether a civil sanction constitutes punishment, we must therefore determine whether the sanction may "fairly be characterized as remedial," or instead only serves the purposes of deterrence or retribution. Id. at 448-49. To determine whether a person is being punished twice for the same offense, we must apply the test announced in Blockburger v. United States, 284 U.S. 299, 304 (1932), by asking "whether each offense contains an element not contained in the other; if not, they are the `same offense' and double jeopardy bars additional punishment and successive prosecution." United States v. Dixon, ___ U.S. ___, 113 S. Ct. 2849, 2856 (1993).

The civil forfeiture complaints in the instant case alleged that the property had been involved in violations of 18 U.S.C. §§ 1956(a)(1)(A)(i), (B)(i) and 1957, thereby triggering the govern-

_____

[1] The Fifth Amendment states, in pertinent part, that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

4

ment's right to seek forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).[2]
Section 1956(a)(1) provides:

> Whoever, knowing that the property involved in a financial
> transaction represents the proceeds of some form of unlaw-
> ful activity, conducts or attempts to conduct such a financial
> transaction which in fact involves the proceeds of specified
> unlawful activity--
>
> (A)(i) with the intent to promote the carrying on
> of specified unlawful activity; or . . .
>
> (B)(i) knowing that the transaction is designed in
> whole or in part to conceal or disguise the
> nature, the location, the source, the owner-
> ship, or the control of the proceeds of
> specified unlawful activity . . .
>
> shall be sentenced to a fine of not more than $500,000 or
> twice the value of the property involved in the transaction,
> whichever is greater, or imprisonment for not more than
> twenty years, or both.

§ 1956(a)(1) (Supp. 1996). Section 1957 makes it illegal for a person
"knowingly [to] engage[ ] or attempt[ ] to engage in a monetary trans-
action in criminally derived property that is of a value greater than
$10,000 and is derived from specified unlawful activity." § 1957(a)
(Supp. 1996).

Blalock's double jeopardy argument fails. Applying the
Blockburger test, it is clear that he was not punished twice for the
same offense. Section 1956 is a money-laundering statute (indeed, the
section is titled "Laundering of monetary instruments"). To prove a
violation of that statute, the government must show that

_____

[2] Section 981(a)(1)(A) provides, in pertinent part, that "[a]ny property,
real or personal, involved in a transaction or attempted transaction in vio-
lation of . . . section 1956 or 1957 of this title, or any property traceable
to such property," is subject to forfeiture to the United States.
§ 981(a)(1)(A) (Supp. 1996).

> (1) the defendant conducted or attempted to conduct a financial transaction; (2) the property involved the proceeds of specified unlawful activity; (3) the defendant knew that the property involved represented the proceeds of some form of unlawful activity; (4) the defendant engaged in the financial transaction with the intent to promote the carrying on of specified unlawful activity; or (5) while knowing that the transaction was designed in whole or in part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the unlawful activity.

United States v. Heaps, 39 F.3d 479, 483 (4th Cir. 1994). To prove a violation of section 1957, the government must show "that the funds or monetary instruments used in a transaction either themselves constitute, or are derived from, the proceeds of specified criminal activity." United States v. Moore, 27 F.3d 969, 976 (4th Cir.), cert. denied, ___ U.S. ___, 115 S. Ct. 459 (1994). To support its section 846 conspiracy charge, however, the government was required to show that Blalock knew of a conspiracy to distribute, or to possess with intent to distribute, at least 1,000 kilograms of marijuana and that he voluntarily joined that conspiracy. United States v. Clark, 928 F.2d 639, 641-42 (4th Cir. 1991); 21 U.S.C. §§ 841, 846 (1981 & Supp. 1996) (discussed infra). The civil and criminal charges clearly are composed of one or more different elements. For example, while in the civil forfeiture proceedings the government would have been required to prove that Blalock had engaged or attempted to engage in a financial transaction, no such proof was required to sustain the conspiracy charge. Similarly, while in the criminal proceedings the government was required to prove that the conspiracy involved at least 1,000 kilograms of marijuana, no such proof would have been required in the forfeiture proceedings. It does not matter whether, with respect to several other elements, there was an "overlap of proof" in the two actions. United States v. Felix, 503 U.S. 378, 386 (1992). Because the civil and criminal proceedings involved one or more different elements of proof, the Double Jeopardy Clause afforded Blalock no protection from prosecution for the crimes of which he was ultimately convicted.**3**

_____

**3** We should further note that, to the extent that the forfeited car and currency were instrumentalities of Blalock's unlawful drug activity, the

B.

After the government rested its case, Lee Roy Blalock moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Under Rule 29, a trial court is required to enter judgment of acquittal "of one or more offenses charged in the indictment or information . . . if the evidence is insufficient to sustain a conviction of such offense or offenses." Fed. R. Crim. P. 29(a). The district court denied the motion. Blalock believes the motion should have been granted. "In reviewing the denial of a motion for acquittal, we must determine whether, taking the evidence and all inferences therefrom in the light most favorable to the government, there is substantial evidence which supports a determination of guilt beyond a reasonable doubt." United States v. Whittington, 26 F.3d 456, 464 (4th Cir. 1994).

Blalock was charged with conspiring, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846, to possess and distribute more than 1,000 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1). Section 841(a)(1) makes it illegal for a person "knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." Section 841(b)(1)(A) (Supp. 1996) requires a sentence of not less than ten years for individuals whose violation of section 841(a)(1) involves 1,000 kilograms or more of marijuana. Section 846 (Supp. 1996) states that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

"The essential elements of a § 846 conspiracy are (1) an agreement between two or more persons to undertake conduct that would violate

_____

forfeiture of those items did not constitute punishment for double jeopardy purposes. See United States v. Cullen, 979 F.2d 992, 994-95 (4th Cir. 1992) (stating that "[t]he removal of an instrument of [an] offense is not primarily an act of punishment" but instead protects the larger community from the threat of ongoing criminal activity, and that, consequently, "the Double Jeopardy Clause does not apply to civil forfeitures where the property itself has been an instrument of criminal activity").

7

the laws of the United States relating to controlled substances and (2) the defendant's wilful joinder in that agreement." Clark, 928 F.2d at 641-42. Once the government has demonstrated that a conspiracy existed, "the evidence need only establish a slight connection between the defendant and the conspiracy to support conviction." United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 505 U.S. 1228 (1992). Indeed, a defendant may properly be convicted of conspiracy even if he did not know his coconspirators or the details of the conspiracy: he need only have known of the conspiracy's purpose and have taken some action, however minor in the overall scheme of the conspiracy, to participate therein. Id.

We hold that the district court did not err when it denied Blalock's motion for acquittal. The government presented evidence indicating that, when bales of marijuana arrived, Pam Beauchamp--one of the conspirators who kept written records of the conspirators' activities--recorded the amount of marijuana delivered to Blalock using the initial "P," "Pete" being Lee Roy's nickname. Blalock was once seen stuffing cash into paper bags with Jimmie, Adam, and Robbie Blalock. On at least one occasion, Blalock relayed instructions to Eddie Kyle concerning the routing of marijuana shipments. At Blalock's request, Kyle dug up a buried vault containing numerous packages of money. Blalock also asked Kyle whether he could install secret compartments in a vehicle; members of the conspiracy frequently used secret compartments to carry money and drugs. Such evidence was more than sufficient to establish the requisite connection between Blalock and the conspiracy.

C.

Over Lee Roy Blalock's objection, Eddie Kyle was permitted to testify that Pam Beauchamp had told him that, in the records she kept concerning the receipt and distribution of marijuana, the letter "P" stood for "Pete," Lee Roy's nickname. Blalock has contended that the testimony was inadmissible hearsay and that he was unduly prejudiced by its admission.

Rule 801(d)(2)(E) of the Federal Rules of Evidence excludes from the hearsay rule statements made "by a coconspirator of a party during the course and in furtherance of the conspiracy." To find that what

8

would otherwise be inadmissible hearsay is admissible under that rule, a district court must find "(1) that there was a conspiracy involving the declarant and the party against whom admission of the evidence is sought and (2) that the statements at issue were made during the course of and in furtherance of that conspiracy." United States v. Blevins, 960 F.2d 1252, 1255 (4th Cir. 1992). The district court's findings of fact in that regard are reviewed for clear error; its decision to admit the statement as evidence is reviewed for an abuse of discretion. Id. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985).

Blalock has not argued that Beauchamp was not one of the conspirators; the evidence presented at Appellants' trial suggested that she clearly was. Instead, Blalock has argued that Beauchamp's explanation of the records to Kyle was not given "during the course and in furtherance of the conspiracy." We conclude otherwise. The fact that the records were being kept at the time the statement was made indicates that the conspiracy was then underway; we therefore find that the district court did not clearly err when it found that the statement was made "during the [conspiracy's] course." Because we believe that one permissible view of Beauchamp's statement is that she deemed it useful to the conspiracy to educate Kyle, an occasional participant therein, concerning the conspirators' practices and record-keeping system, we similarly find no clear error in the district court's finding that the statement was made "in furtherance of the conspiracy." Given the obvious relevance of the statement to the question of Blalock's guilt, we further hold that it was not an abuse of discretion to admit the statement as evidence.

D.

The district court concluded that, for sentencing purposes, 17,702.63 pounds (8,029.91 kilograms) of marijuana were attributable to Jimmie Blalock, and 16,740.63 pounds (7,593.55 kilograms) were attributable to Lee Roy Blalock. Both Appellants have argued that the district court erred when it made those calculations.

We review the findings of fact made by the district court during sentencing only for clear error. United States v. Vinson, 886 F.2d 740,

9

742 (4th Cir. 1989), cert. denied, 493 U.S. 1062 (1990). When calculating the amount of drugs attributable to a person convicted of conspiracy, the district court may consider not only the conduct of the defendant himself, but also the reasonably foreseeable conduct of the defendant's coconspirators. U.S.S.G. § 1B1.3(a)(1)(B).

At trial, the government presented testimony indicating that, prior to the government's raid of the conspirators' headquarters on February 1, 1990, between 36 and 48 shipments of marijuana arrived there, with between 450 and 750 pounds arriving in each shipment. The district court took the lower end of those two ranges, multiplied 36 by 450 and determined that 16,200 pounds (approximately 7,350 kilograms) of marijuana were attributable to each Appellant. Other, smaller amounts were attributed to one or both of them as well. Having carefully reviewed the record, we find that the district court did not clearly err when it made those calculations.

E.

Section 2D1.1(b)(1) of the Sentencing Guidelines provides that, "[i]f a dangerous weapon (including a firearm) was possessed" during the commission of a drug offense, then the defendant's base offense level should be enhanced by two. The Application Notes elaborate upon that provision:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

App. Note 3 (emphasis added). Both Appellants have contended that the district court clearly erred when it enhanced their respective sentences pursuant to that provision.

During the sentencing hearing, both men argued that the evidence did not indicate that they had ever used or carried weapons while car-

10

rying on the activities for which they had been convicted. The district court nevertheless held that enhancement was appropriate:

> I will find that there were some 32 guns, seven of which were loaded,**4** inside the house at Fraternity [Church] Road [the location where many of the drug shipments were received and parcelled out for distribution]; that each of the two defendants were in and out of the house, engaged in the activities at the house of counting money, which the Court has already found to be, from this evidence, in furtherance of the conspiracy. And it occurs to the Court that I believe there were surveillance lights and cameras around this house.

> The activities of drugs themselves would seem to cause one to think that it was foreseeable that guns could be used, when you're talking about hiding in secret compartments and loads of marijuana. When you're talking about hiding sums of money in the hundreds or $200,000, . . . it would not be out of the range of foreseeability to find that a gun was used in connection with the activities. And I will so find that [enhancement] is appropriate as to Jimmie Blalock and Lee Roy Blalock.

We may reject the district court's factual determinations in this regard only if they are clearly erroneous. Brooks, 957 F.2d at 1148.

Because we do not believe it was "clearly improbable" that the weapons found at the conspirators' headquarters would be used in furtherance of the conspiracy, we hold that the district court did not commit clear error. The presence of thirty-two guns--a number of which were loaded--on the property where many of Appellants' drug activities occurred is entirely different from the unloaded hunting rifle to which the Application Notes make reference. We accordingly reject Appellants' arguments to the contrary.

_____

**4** The Presentence Investigation Reports indicated that thirteen of the guns were loaded.

11

III.

For the foregoing reasons, we uphold Appellants' convictions and sentences.

AFFIRMED.

12